IN THE UNITED STATES FEDERAL DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI

PAUL JACKSON,                        )
                                     )
                    Plaintiff,       )
                                     )
        Vs.                          )        Case No.:
                                     )
THE CURATORS OF THE                  )        PLAINTIFF DEMANDS
UNIVERSITY OF MISSOURI,              )        TRIAL BY JURY
A Public Body Corporate and          )
Politic,                             )
                                     )
                    Defendant.       )

## COMPLAINT

### Preliminary Facts

COMES NOW the Plaintiff in the above-entitled cause and for his

Preliminary Facts in support of his Complaint, and all claims and counts

thereof, states as follows:

1.      Plaintiff Paul Jackson is a resident of the County of Boone,

State of Missouri

2.      At all times herein mentioned, Defendant Curators of the

University of Missouri, hereinafter referred to as the Defendant

"University," was and is a public body corporate and politic created under

and by virtue of the Constitution laws of the State of Missouri.

3.      At all times herein mentioned, the Defendant was and is a

University located in Boone County, Missouri engaged in the business of

creating and maintaining a school of higher learning including teaching and conferring degrees of higher learning and all matters related thereto.

4. At all times herein mentioned, The Visual Artist's Rights Act, Title 17 Section 106A of the United States Code, was in effect and applicable to the matters hereinafter set forth.

5. This Court has subject matter jurisdiction over the matters set forth herein pursuant to The Visual Artist's Rights Act, Title 17 Section 106A of the United States Code.

6. At all times herein mentioned, the Plaintiff was an Artist within the terms and provisions of The Visual Artist's Rights Act.

7. At all times herein mentioned, the Tiger Spot, as hereinafter described, was and is a Work of Visual Art as described in and protected by The Visual Artist's Rights Act.

8. The Tiger Spot mosaic is a Work of Visual Art of recognized stature.

9. The Plaintiff arranged to create an original Work of Visual Art for Defendant University at its campus in Columbia, Boone County, Missouri.

10. The Work of Visual Art to be created was and is a mosaic, named the "Tiger Spot," consisting of glass tiles portraying the image of a Tiger.

11. The Tiger is a mascot and symbol of the University of Missouri.

2

12. The Tiger image was to be contained in a circle 30 feet in diameter.

13. It was arranged between Plaintiff and Defendant that the Tiger Spot mosaic would be created and installed on the Lowry Mall in front of the library on the campus of the University of Missouri in Columbia, Missouri.

14. Thereafter the Artist created and installed the Tiger Spot mosaic on the Lowry Mall in front of the University of Missouri library.

15. The Artist spent approximately two years in creating and installing the Tiger Spot mosaic.

16. The University approved of and arranged for the purchase of all materials used in the creation of the Tiger Spot mosaic.

17. The Defendant University was responsible for assuring adequate drainage for the mosaic on the Lowry Mall. See the letter attached hereto, marked "Plaintiff's Exhibit No. 1" and by this reference made a part hereof.

18. The Tiger Spot mosaic consists of three layers.

(a) The first or top layer of the mosaic is a one inch thick layer of concrete embedded with glass tiles portraying the Tiger image.

(b) The second layer is a mastic or substance used to bind the first and third layers together.

(c) The third or bottom layer is a four foot thick concrete pad set into the ground to securely anchor the Tiger Spot mosaic to the ground.

3

## The First Layer

19. The first layer was designed to be a circle 30 feet in diameter and consisting of 744 square feet.

20. The Artist embedded glass mosaic tiles in the first layer of concrete to create the image of the Tiger.

21. The brand name of the first one inch layer of concrete in which the mosaic tiles were embedded is "DiamondCrete."

22. The University knew in advance, approved the use of and arranged the purchase of the DiamondCrete.

23. The tiles used in the mosaic were glass smalti manufactured by and purchased from Orsoni Mosaics in Venice, Italy.

24. Orsoni Mosaics recommended the particular type of smalti used for outdoor floor mosaics.

25. The University approved of and purchased the smalti tile used for the Tiger Spot mosaic. See the e-mails attached hereto, marked "Plaintiff's Exhibit No. 2" and by this reference made a part hereof.

## The Second Layer

26. The second layer of the Tiger Spot mosaic is a mastic or type of concrete used to bind and adhere concrete to concrete.

27. The brand name of the mastic used by the Artist to bind the one inch layer of concrete to the concrete pad is called "Laticrete."

4

28. The mastic is troweled on top of the concrete pad to level out the inconsistencies in the surface of the concrete pad and to bind the top layer to the concrete pad.

29. The University approved of the use of the Laticrete in advance and arranged for its purchase.

## The Third Layer

30. The third layer or the concrete pad was supposed to be a disc of concrete four (4) feet thick and thirty (30) feet in diameter made with DiamondCrete.

31. The University was to build the concrete pad in accordance with the Artist's specifications.

32. The Tiger Spot mosaic was to be installed in front of the Library on the Lowry Mall on the campus of the University of Missouri.

33. The University was solely responsible for the engineering on the project. See the letter attached hereto, marked "Plaintiff's Exhibit No. 3" and by this reference made a part hereof.

34. The Artist provided the specifications to the University for the Concrete Pad.

35. The area of the Tiger mosaic was to be sloped away from the Library on the Lowry Mall to direct the drainage of rainwater and other precipitation away from the Tiger mosaic.

36.     The Artist's specifications required that the concrete pad consist completely of concrete with steel I-beams running across the middle in two directions forming a cross or a plus sign.

37.     The University dug out an area deep enough for the four foot thick concrete pad on the Lowry Mall in front of the University Library.

38.     The University built the concrete pad by shoveling gravel into the area dug out for the concrete pad and pouring concrete on top of the gravel.

39.     The University piled up the gravel in the middle.

40.     The concrete pad produced by the University was not uniformly four (4) feet thick as provided by the specifications.

41.     The concrete portion of the pad produced by the Defendant was about six (6) inches thick in the middle and spreading out to four (4) feet thick on the edges despite the specifications for the pad to be a consistent four (4) feet thick of concrete throughout.

42.     The concrete pad produced by Defendant University was a domed shaped piece of concrete about six (6) inches thick in the center and progressively thicker towards the outside edges.

43.     Furthermore, the surface of the concrete pad was also from one-half (1/2) to four (4) inches off level throughout.

44.     The concrete pad produced by the University was 29 feet 11 inches in diameter instead of the thirty (30) feet required by the Artist's specifications.

45.     Moreover, the Defendant produced a much larger area of concrete to accommodate the concrete pad for the mosaic and also an outer shelf encircling the concrete pad.

46.     The Artist's original specifications did not provide for an encircling shelf of concrete to be a part of the Tiger Spot mosaic.

47.     The outer shelf is one to one and a half (1½) feet thick extended out beyond the thirty (30) foot diameter (actually 29 feet 11 inches) by up to 15 feet creating a much larger circle of concrete.

48.     The concrete pad and the encircling shelf consisted of one continuous slab of concrete with no expansion joints.

49.     The outer shelf was large enough to accommodate at least several rows of bricks.

50.     The Defendant intended that bricks to be purchased by and inscribed for donors be laid on the shelf surrounding the Tiger image in an effort to raise money.

51.     The failure of Defendant to produce the concrete pad in accordance with the Artist's specifications caused major problems in the installation of the Tiger mosaic and the subsequent condition of the Tiger Spot mosaic.


Creating the Tiger Image

52.     The Artist prepared a master diagram or grid of the first layer of the Tiger Spot image which was to consist of two foot by two foot (2' X 2')

DiamondCrete Sections except that the Sections near the outer edge of the mosaic are smaller to make the arc of the circle.

53.    The master diagram divided the Tiger image into 201 distinct Sections of DiamondCrete.

54.    The Artist created the first or top layer in his studio.

55.    The Artist made each individual Section by building a wooden form.

56.    Contact paper was placed in the bottom of each wooden form.

57.    The Artist then placed the appropriate glass tiles face down on the contact paper in each wooden form.

58.    The Artist then poured approximately one (1) inch of Diamondcrete on top of the tiles in the wooden form to create the individual Sections of the Tiger image.

59.    The Sections were intended to be seamed and bonded together to create the Tiger image.


Installation

60.    The Artist took the wooden forms to the site of the Tiger Spot on the Lowry Mall.

61.    On the Lowry Mall each one (1) inch layer of Diamondcrete with tiles embedded was removed from its wooden form.

62.    The layer of Laticrete mastic was then troweled on top of the concrete pad.

63. Then the Sections of Diamondcrete were placed on top of the layer of Mastic to bind them to the concrete pad.

64. The Sections were placed on the mastic in accordance with the Artist's master grid to create the Tiger image.

65. Then the Artist placed DiamondCrete and glass tiles by hand between each section on top of the layer of mastic to seam and bind the Sections to each other.

66. When the process of installing the Sections of mosaic tiles was about half way completed, the Artist realized that the Sections did not fit the original master diagram which was scaled to a 30 foot diameter circle.

67. Because the concrete pad produced by the University was only 29 feet 11 inches in diameter, the DiamondCrete Sections had to be physically modified to fit the smaller scale of the concrete pad produced by the University.

68. Having to make physical modifications to accommodate the deviation in the dimensions of the concrete pad set the work back and caused unanticipated problems and delays.

### The Tent

69. A tent was provided by the Defendant University and set up on Lowry Mall to protect the project from the elements during the installation.

70. The DiamondCrete and Laticrete were applied on the site of the Lowry Mall by the Artist.

71.     The tent was intended to protect the concrete so that it could set and cure properly.

72.     During much of the time that the concrete was being applied, it was raining on the Lowry Mall.

73.     The tent was removed during the process of binding and seaming the Sections together with Diamondcrete.

74.     The University removed the tent at a time when it was raining on the Lowry Mall.

75.     The rain water mixed with the Diamondcrete corrupting and weakening it.

76.     The removal of the tent by the University prevented necessary and proper curing of the Diamondcrete at a crucial time in the project.

77.     The University removed the tent without the consent of the Artist and despite the strong protest of the Artist.

78.     The tent was removed by the University several days prior to the unveiling ceremonies planned by the University to present the Tiger Spot to the public.

79.     The University removed the tent according to its own schedule and despite the fact that the Tiger Spot was left exposed to the rain.

80.     As a result of the rain and the removal of the tent, the DiamondCrete did not set and cure properly.

## Maintenance and Repair Required

81.     In addition, after the opening ceremonies, the Defendant immediately opened the Lowry Mall including the area of the Tiger Spot mosaic to all traffic including, but not limited to, foot traffic, vehicular traffic, skate boards, snow plows and other traffic.

82.     The University opened the area of the mosaic at a time when the DiamondCrete and Laticrete had been corrupted by the rain and had not had adequate time to be repaired or set and cured properly.

83.     The mosaic was damaged as a result of such traffic at a time when it had not had an adequate opportunity to set and cure properly.

84.     The Defendant University permitted and allowed this damage to the Tiger Spot mosaic.

85.     After the opening ceremonies and the rain water mixing with the DiamondCrete and the LatiCrete, as aforesaid, the Artist had to replace much of the DiamondICrete seaming between Sections.

86.     The Artist spent months replacing the DiamondCrete seams between the Sections.

87.     Maintenance and repair were required on numerous occasions to fix problem areas due to the Defendant's failure to provide adequate engineering and adequate drainage to the Tiger Spot mosaic.

88.     Maintenance and repair were required on numerous occasions to fix problem areas due to Defendant's decision to remove the tent at a crucial point in the application, setting and curing of the concrete.

89.     Maintenance and repair were required on numerous occasions to fix problem areas due to Defendant's decision to immediately allow traffic on and over the mosaic at a crucial point in the setting and curing of the concrete.

## Vandalism

90.     In addition, there were numerous incidents of vandalism to the Tiger mosaic.

91.     Maintenance and repair were required on numerous occasions to repair damage and problem areas due to incidents of vandalism to the mosaic.

92.     `The Artist asked the Defendant to provide adequate security to the site of the Tiger mosaic.

93.     The Defendant University refused to provide adequate security to the site of the Tiger mosaic and blamed the weather for the damage.

94.     After each incident of vandalism the Artist repaired the damage.

## Drainage

95.     Prior to the installation of the Tiger Spot mosaic, the University was supposed to provide adequate drainage of the area of the Tiger Spot mosaic.

96. The University failed to provide adequate drainage and thus allowed water to permeate and seep into the Tiger mosaic each time it rained.

97. Moreover, as a result of the Defendant's failure to provide adequate drainage, as aforesaid, at times there was standing water or water that accumulated on the Tiger Spot mosaic.

98. Such water caused damage to the Tiger Spot mosaic.

99. The University arbitrarily installed a drain at a spot approximately the top of the head of the tiger on the mosaic.

100. The University installed this drain without the knowledge, consent or approval of the Artist.

101. The Artist complained repeatedly to the Defendant University that the drainage was not adequate but the University failed and refused to remedy the problem.

### Bollards

102. After the opening of the Tiger Spot on the Lowry Mall, the University decided to erect a system of Bollards around the Tiger Spot mosaic.

103. The bollards were not part of the original plan for the Tiger Spot mosaic project.

104. This decision to install the bollards was made by the University without the knowledge or consent of the Artist and the Artist would never have consented to such an action.

105. The Defendant did not ask or consult with the Artist on the decision to install the bollards or whether they could be installed without further damaging the mosaic.

106. This decision was made during the period in which the concrete from repairs to the mosaic was still in the process of setting and curing.

107. The system consisted of 21 bollards or steel structures which were approximately three (3) feet tall from the ground up and connected above the ground by link chains.

108. The bollards were bolted onto concrete footings which footings were poured into holes dug approximately four (4) feet into the ground to securely anchor the bollards to the ground.

109. The University used a Bobcat with a special concrete-breaking jackhammer to pulverize and create holes approximately two and one half (2½) feet in diameter in the concrete shelf encircling the Tiger mosaic to install the bollards.

110. The University used an auger to dig 21 separate holes approximately four (4) feet deep encircling the Tiger Spot mosaic.

111. In order to dig the 21 holes, the University jack hammered on and through the same continuous slab of concrete that the Sections of glass mosaic tiles were set on.

112. The University placed the Bobcat on the concrete shelf surrounding the Tiger mosaic in order to dig the 21 holes.

113.   At times during the jack hammering the Bobcat was on the surface of the Tiger mosaic itself.

114.   When the Artist discovered this situation in progress during the second day of the jack hammering operation, he immediately protested to Defendant University.

115.   The Defendant University ignored the pleas of the Artist to stop and continued the jack hammering operation that day and the next day.

116.   No damage to the tiles or the top layer of DiamondCrete in which the tiles were embedded was immediately visible or obvious.

117.   The vibrations from jack hammering caused the concrete Sections in which the tiles were set to crack and separate from the concrete pad.

118.   However, within several months the tiles started to crack, shatter and come loose.

119.   The cracks in and shattering of the tiles allowed water to seep in and permeate the tiles and cause further damage to the tiles.

120.   The cracks in and shattering of the tiles also allowed water to seep in between the layers of the mosaic and undermine the Laticrete mastic binding the DiamondCrete Sections to the concrete pad forming the foundation of the Tiger Spot mosaic.

121.   As a result of the actions of the University as aforesaid, the Tiger Spot was further damaged.

122. The Tiger Spot mosaic has required substantial maintenance and repair as a result of the Defendant's decision to install bollards encircling the Tiger Spot mosaic and the manner and method employed by the Defendant to install the bollards as described above.

### Defendant's Refusal to Maintain and Repair

123. The Defendant University has covered the Tiger Spot mosaic with a tarp.

124. The Artist has implored the University to repair the Tiger Spot and make arrangements for its ongoing maintenance.

125. In March of 2010, the University notified the Artist that it was not going to repair the Tiger Spot.

126. Without adequate maintenance and repair, the Tiger Spot will ultimately be damaged and destroyed beyond repair.

127. The Defendant University has engaged in and continues to engage in a continuous course of conduct damaging and potentially destroying the Tiger Spot mosaic and the Artist's honor and reputation.

128. The Defendant University has deprived the Artist of his rights by using the Artist's name honor and reputation in connection with the creation and installation and display of the Work of Visual Art and then allowing the Artist and his honor and reputation to be harmed and damaged by Defendant's actions as set forth above.

129. The actions of the Defendant University, as aforesaid, have harmed and damaged the Artist, his honor and reputation.

130. The Defendant University has wrongfully and intentionally deprived the Artist's of his right to prevent damage and potential destruction to the Tiger Spot mosaic.

131. The actions of the Defendant University were and are in direct violation and breach of the rights of the Artist pursuant to The Visual Artist's Rights Act.

132. By reason of the foregoing, the Artist has been injured and damaged by the Defendant as described above.

133. The acts and conduct of the Defendant University, as aforesaid, were not carried out in good faith and were in violation and breach of the Laws of the United States.


## Count I

COMES NOW the Plaintiff in the above-entitled cause and for his claim against Defendant on Count I of this Complaint, states as follows:

134. Plaintiff hereby alleges and adopts by reference the allegations contained in Paragraphs 1 through 133 of the Preliminary Facts section of this Complaint and also Paragraphs 149 through 156 of Count II and also Paragraphs 157 through 167 of Count III of the Complaint as if the same were fully set forth in this Count I.

135. The Tiger Spot mosaic is a work of recognized stature.

136.  The Defendant University has distorted, mutilated and otherwise modified the Tiger Spot mosaic, as aforesaid.

137.  The distortion, mutilation and other modification of the Tiger Spot mosaic is prejudicial to the Artist's honor and reputation.

138.  The Defendant University's distortion, mutilation and other modification of the Tiger Spot mosaic, as aforesaid, constitutes a destruction of the Artist's work under the Visual Artist's Rights Act.

139.  The Defendant University's distortion, mutilation and other modification of the Tiger Spot mosaic, as aforesaid, was and is intentional or grossly negligent in violation of the Visual Artist's Rights Act.

140.  The intentional distortion, mutilation and other modification of the Tiger Spot mosaic is a violation of the Artist's rights under the Visual Artist's Rights Act.

141.  Plaintiff will be irreparably harmed if the Court does not enter its Order restraining and enjoining Defendant from refusing to repair and maintain the Tiger Spot before the damage and the repair to the Tiger Spot is beyond repair.

142.  Defendant will not be harmed by injunctive relief because the granting of such relief is merely in accordance with The Visual Artist's Rights Act.

143.  Defendant will not be harmed by injunctive relief because the granting of such relief will not harm the University in any way or subject it to any risk of harm.

144.   If this Court grants such relief the Defendant will be able to continue to do its business and manage and operate the University of Missouri and requiring the Defendant to repair and maintain the Tiger Spot will not effect the business of the University of Missouri or the management and operation of the University.

145.   If this Court does not enjoin the Defendant from allowing the Tiger Spot mosaic to continue to be damaged and destroyed then at some point the Tiger Spot mosaic will be damaged and destroyed beyond repair and the Plaintiff will be deprived of his rights pursuant to The Visual Artist's Rights Act.

146.   Any inconvenience or costs to the Defendant is relatively slight in comparison to the harm to the Plaintiff and to the Work of Visual Art in allowing the Tiger Spot mosaic to be damaged and destroyed beyond repair if such action is not enjoined.

147.   The Plaintiff has no adequate remedy at law because the Defendant has possession and control of the Tiger Spot mosaic and the obligation and duty to maintain and repair the Tiger Spot mosaic and has willfully and intentionally violated the terms and provisions of The Visual Artist's Rights Act and if the Defendant is not enjoined, the Plaintiff and his Work of Visual Art will be further damaged and destroyed if not properly maintained and displayed.

148.   The Plaintiff should be awarded his reasonable attorney's fees and the costs of this litigation for enforcing his rights under The Visual

Artist's Rights Act and in prosecuting his rights under The Visual Artist's Rights Act against the Defendant University of Missouri.

WHEREFORE, Plaintiff prays that the Court issue its Order, Judgment and Decree against the Defendant, Curators on Count I of this Complaint as follows:

(a)     Finding and declaring that the Defendant has violated The Visual Artist's Rights Act by failing and refusing to repair and maintain the Tiger Spot mosaic.

(b)     Ordering that the Defendant cease and desist from failing and refusing to properly repair and maintain the Tiger Spot mosaic.

(c)     Ordering Defendant University to cease and desist from failing and refusing to properly display the Tiger Spot mosaic.

(d)     Ordering Defendant to cease and desist from any and all acts that would distort, mutilate or otherwise modify or potentially destroy or continue to distort, mutilate or otherwise modify or potentially destroy the Tiger Spot mosaic.

(e)     Issuing its permanent injunction restraining and enjoining Defendant from failing and refusing to repair and maintain the Tiger Spot mosaic.

(f)     Awarding Plaintiff his reasonable attorney's fees and costs incurred in enforcing his rights and the rights of the Work of Visual Art under the Visual Artist's Rights Act and in the prosecution of this action.

(g)     For the costs of this action and for such other and further relief as to the Court may seem just and proper in the premises.

## Count II

COMES NOW the Plaintiff in the above-entitled cause and for his claim against Defendant on Count II of this Complaint, states as follows:

149.    Plaintiff hereby alleges and adopts by reference the allegations contained in Paragraphs 1 through 133 of the Preliminary Facts section of this Complaint and also Paragraphs 134 through 148 of Count I and also Paragraphs 157 through 167 of Count III of the Complaint as if the same were fully set forth in this Count II.

150.    The University allowed the Artist and the Work of Visual Art to be blamed and criticized for the problems with the Tiger Spot mosaic when the problems were caused by or were the direct result of the Defendant University's failure to perform its part of the project properly and by its interference with the creation and installation of the mosaic and the proper installation and drainage of the mosaic.

151.    The Defendant University has deprived the Artist of his rights by using the Artist's name, talent, honor and reputation in connection with the creation and installation and display of the Work of Visual Art and then allowing the Artist and his honor and reputation to be harmed and damaged by Defendant's actions as set forth above.

152. The actions of the Defendant University, as aforesaid, have harmed and damaged the Artist, his honor and reputation.

153. The Defendant University has wrongfully and intentionally deprived the Artist's of his right to prevent damage and destruction to the Tiger Spot mosaic.

154. The actions of the Defendant University were and are in direct violation and breach of the rights of the Artist pursuant to The Visual Artist's Rights Act.

155. By reason of the foregoing, the Artist has been injured and damaged.

156. The acts and conduct of the Defendant University, as aforesaid, were not carried out in good faith and were in violation and breach of the Laws of the United States.

WHEREFORE, Plaintiff prays for Judgment against Defendant on Count II of his Complaint, for damages in an amount that is fair and reasonable under the circumstances, for his reasonable attorney's fees and the costs of the prosecution of this matter, for his costs herein expended and for such other and further relief as to the Court may seem just and proper and PLAINTIFF DEMANDS TRIAL BY JURY.

Count III

COMES NOW Plaintiff in the above-entitled cause and for his claim against Defendant on Count III of this Complaint, states as follows:

22

157.   Plaintiff hereby alleges and adopts by reference the allegations contained in Paragraphs 1 through 133 of the Preliminary Facts section of this Complaint and also Paragraphs 134 through 148 of Count I and also Paragraphs 149 through 156 of Count II of the Complaint as if the same were fully set forth in this Count III.

158.   A fund was created for the preservation and maintenance of the Tiger Spot.

159.   The concept for the fund was created by the Artist and he personally engaged in solicitation and efforts to raise money for the fund.

160.   The University took control of the fund and all money received and collected.

161.   Additional money was raised for the fund through the sale of bricks to be placed in the area surrounding the Tiger Spot mosaic.

162.   The Defendant University has never provided a proper accounting of the money raised or the use of such money for the preservation and maintenance of the Tiger Spot mosaic.

163.   On information and belief the Artist states that the University charged the Tiger Spot Fund the sum of One Hundred Twenty Thousand Dollars ($120,000.00) to produce the concrete pad described above.

164.   The Artist submits that this appears to be an unreasonable charge and in excess of any reasonable charge for the work of the University even if the University had done the work properly which it did not

and even if the work had not cause substantial problems to the Tiger Spot which it did.

165. The University owes a fiduciary duty to the Artist, the donors and the citizens of the State of Missouri for whom the University is required to be a good steward to properly administer, use and account for the money raised for the Tiger Spot Fund.

166. The Plaintiff, the donors and the people of the State of Missouri deserve a proper accounting of the Funds placed in the hands of the University and the use of those funds and the Plaintiff, the donors and the people of the State of Missouri deserve a proper accounting of such funds.

167. Plaintiff demands a proper accounting of the Fund and all moneys collected and received for the purposes described above and of the use of such funds by the Defendant University.

WHEREFORE, Plaintiff prays for Judgment against Defendant on Count III of his Complaint, for damages in an amount that is fair and reasonable under the circumstances, for his reasonable attorney's fees and the costs of the prosecution of this matter, for his costs herein expended and for such other and further relief as to the Court may seem just and proper under the circumstances.

Respectfully submitted:


TOFLE & OXENHANDLER,
ATTORNEYS, P.C.


Marvin Tofle    MO Bar #23522
220 N. Eighth Street
P.O. Box 1404
Columbia, Missouri 65205
Phone: (573) 449-2929
FAX: (573) 875-0757
E-Mail: marvin@tofleox.com
Attorneys for Plaintiff
Paul Jackson

IN THE UNITED STATES FEDERAL DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI

PAUL JACKSON, )
)
Plaintiff, )
)
Vs. )    Case No.:
)
THE CURATORS OF THE )
UNIVERSITY OF MISSOURI, )
A Public Body Corporate and )
Politic, )
)
Defendant. )

## PLAINTIFF'S
## VERIFICATION OF COMPLAINT

Paul Jackson, of lawful age, and after being first duly sworn upon his

oath, states that he is the Plaintiff in the above-entitled case and states that

he has read the above verified Complaint and that the matters and things

stated in the verified Complaint are true to the best of his knowledge except

as to those matters stated on information and belief, and those he believes

to be true.

_____
Paul Jackson

26

STATE OF MISSOURI )
                        ) ss
COUNTY OF BOONE )

      Subscribed and sworn to before me, a Notary Public, this 12th day of
January     , 2011.

                                    _____
                                    Notary Public

(seal)
                         CARLA JOHNSON
                    My Commission Expires
                    September 15, 2014
                      Boone County
                  Commission #10428565

My Commission Expires: