# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

PAUL JACKSON,                          )
                                       )
    Plaintiff,                          )
                                       )
v.                                     )          Case No. 2:11-4023-CV-C-MJW
                                       )
THE CURATORS OF THE                    )
UNIVERSITY OF MISSOURI,                )
                                       )
    Defendant.                          )

## SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Respectfully submitted,

HUSCH BLACKWELL LLP

/s/ Jeffrey J. Simon
William B. Kircher     MO# 18743
Jeffrey J. Simon       MO# 35558
4801 Main Street, Ste 1000
Kansas City, MO 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
bill.kircher@huschblackwell.com
jeff.simon@huschblackwell.com

Attorneys for Defendant

## Table of Contents

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .......................................................................................................... 1

STANDARD OF REVIEW ............................................................................................ 2

PLAINTIFF'S ALLEGATIONS ................................................................................... 3

ARGUMENT ................................................................................................................. 4

I.   UNIVERSITY IS IMMUNE FROM SUIT FOR ALL COUNTS IN THIS ACTION AND
     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION ....... 4

     A.   Eleventh Amendment Sovereign Immunity from Counts I and II ................................ 5

     B.   Statutes Not Enacted Pursuant to Fourteenth Amendment ........................................... 7

     C.   No Waiver of State's Immunity ...................................................................................... 8

     D.   CRCA Does Not Abrogate Eleventh Amendment Immunity ......................................... 9

     E.   Eleventh Amendment Sovereign Immunity from Count III ......................................... 10

II.  IN THE ALTERNATIVE, COUNTS I AND II SHOULD BE DISMISSED BECAUSE
     VARA DOES NOT APPLY TO THE TIGER SPOT ....................................................... 11

     A.   The Tiger Spot is Not a "Work of Visual Art." .......................................................... 11

     B.   The Tiger Spot is Site-Specific Art, So VARA Does Not Apply ................................ 15

          1.   The Tiger Spot is Site-Specific Art ...................................................................... 15

          2.   "VARA Does Not Apply to Site-Specific Art At All." ......................................... 17

CONCLUSION ........................................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

Ashcroft v. Iqbal,
    129 S.Ct. 1937 (2009) ........................................................................................ 3

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) .......................................................................................... 2

Carter v. Helmsley-Spear, Inc.,
    71 F.3d 77 (2nd Cir. 1995) ............................................................................ 11

Chavez v. Arte Publico Press,
    204 F.3d 601 (5th Cir. 2000) ........................................................................... 9

Chefins v. Stewart,
    2011 WL 1233378 (D.Nev. March 29, 2011) ............................................... 13

Clark v. Barnard,
    108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883) ............................................ 7

Cole v. Homier Dist. Co., Inc.,
    599 F.3d 856 (8th Cir. 2010) ........................................................................... 3

College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.,
    527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) ............................. 7, 8

Conley v. Gibson,
    355 U.S. 41 (1957) ........................................................................................... 2

Coons v. Mineta,
    410 F.3d 1036 (8th Cir. 2005) ......................................................................... 3

DeRomero v. Inst. Of Puerto Rican Culture,
    466 F.Supp. 2d 410 (D.P.R. 2006) .................................................................. 9

Erickson v. Pardus,
    551 U.S. 89 (2007) ........................................................................................... 2

Fitzpatrick v. Bitzer,
    427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed. 2d 614 (1976) ................................... 7

Florida Prepaid Postsecondary Education Expense Bd. v. College Savings Bank,
    527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed. 2d 575 (1999) ............................ 7, 8

Hairston v. N.C. Agric. & Tec. State Univ.,
    No. 04 Civ. 1203, 2005 WL 2136923 (M.D.N.C. Aug. 05, 2005) .................. 9

Infomath v. University of Arkansas,
    633 F. Supp. 2d 674 (E.D. Ark. 2007) ............................................................ 9

Jacobs v. Memphis Convention,
    710 F.Supp.2d 663 (W.D.Tenn. 2010) .......................................................... 10

Kelley v. Chicago Park Dist.,
  2011 WL 501161, *7 (7th Cir., February 15, 2011) ..................................................... 5, 11, 12

Kokkonen v. Guardian Life Inc.,
  511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed. 2d 391 (1994)......................................................... 5

Kottschade v. City of Rochester,
  319 F.3d 1038 (8th Cir. 2003) ............................................................................................. 2

Marketing Inf. Masters, Inc. v. Bd. of Trustees of CA State Univ.,
  552 F.Supp.2d 1088 (S.D. Cal. 2008)................................................................................. 10

National Association of Board of Pharmacy v. Board of Regents
  of the University System of Georgia,
  633 F.3d 1297 (11th Cir., 2011) ......................................................................................... 10

Neitzke v. Williams,
  490 U.S. 319 (1989)............................................................................................................ 2

Pennsylvania v. Union Gas Co.,
  491 U.S 1 (1989)................................................................................................................. 5

Phillips v. Pembroke Real Estate, Inc.,
  459 F.3d 128 (1st Cir. 2006).............................................................. 11, 15, 16, 17, 18

Phillips v. Pembrooke Real Estate, Inc.,
  288 F.Supp. 2nd 89 (D. Mass. 2003) ................................................................................. 16

Pollara v. Seymour,
  344 F.3d 265 (2nd Cir. 2003) ............................................................................................ 12

Rodriguez v. Texas Comm'n on the Arts,
  199 F.3d 279 (5th Cir. 2000) .............................................................................................. 9

Romero v. Ca. Department of Transportation,
  2009 WL 650629 (C.D. Cal., March 12, 2009) .................................................................. 10

Salerno v. City University of New York,
  191 F.Supp. 2d 352 (S.D.N.Y. 2001) ................................................................................. 9

Schaaf v. Residential Funding Corp.,
  517 F.3d 544 (8th Cir. 2008), cert. denied, 129 S.Ct. 222 (2008)......................................... 2

Seminole Tribe of Florida v. Florida,
  517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed. 2d 252 (1996)........................................................ 6

Sherman v. The Curators of the University of Missouri,
  871 F. Supp. 344 (W.D. Mo. 1994) .................................................................................... 5

Teeter v. Glass Onion, Inc.,
  2010 WL 2772198, *16 (W.D. Mo., July 12, 2010)........................................................... 13

Wilcox v. Career Step,
  2010 WL 4968263 (D. Utah, Dec. 1, 2010) ....................................................................... 10

Young v. City of St. Charles,
  244 F.3d 623 (8th Cir. 2001) .............................................................................................. 2

Case 2:11-cv-04023-MJW   Document 6   Filed 04/13/11   Page 4 of 25

**Federal Statutes**

17 U.S.C. (a)(5) ........................................................................................... 14

17 U.S.C. § 101 ...................................................................................... 11, 12

17 U.S.C. § 106A .................................................................................... 1, 3, 4

17 U.S.C. § 106A(a) ...................................................................................... 12

17 U.S.C. § 511(a) .......................................................................................... 6

**State Statutes**

172.020 R.S.Mo. Cum. Supp. 2009 .................................................................. 4

**Other Authorities**

5 PATRY § 16:7 (2010) ................................................................................ 12

Article IX, Section 9, Missouri Constitution .................................................. 4

Copyright Remedy Clarification Act ............................................................ 5, 9

Dictionary.com ............................................................................................. 14

H.R.Rep. No. 101-514, at 1990 U.S.C.C.A.N. 6915, 6920-21 ................. 12, 14

Merriam-Webster dictionary ......................................................................... 14

*Phillips Has Left VARA Little Protection for Site-Specific Artists,*
16 J. Intell. Prop. 297, 300 (2008-2009) ................................................ 16

Senate Report No. 101-305, 101st Cong., 2d Sess. 8 (1990) ............................ 6

*The Should-It-Stay or Should-It-Go Spotlight: Protection of Site-Specific Art Under VARA,*
123 DePaul J.Art. & Ent. Law 101, 112 .................................................. 16

www.wordnetweb.princeton.edu ................................................................. 14

## SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's claims are barred by the doctrine of sovereign immunity. In addition, the statute upon which plaintiff bases Counts I and II does not apply to these claims. For these reasons, plaintiff's Complaint should be dismissed in its entirety.

## INTRODUCTION

This lawsuit arises out of a 30-foot diameter mosaic, known as the "Tiger Spot", which plaintiff Jackson created in the heart of the University of Missouri campus in Columbia, Missouri (the "University"). The mosaic, which is made up of thousands of small pieces of colored glass embedded into concrete, depicts a Bengal Tiger, the mascot of the University. The mosaic is flat and flush with the ground. It is built into Lowry Mall, in front of the main entrance to the University's main library, and is part of a pedestrian mall traversed daily by students. Shortly after its construction, however, the Tiger Spot began to crumble and deteriorate. After many years of attempting to repair the mosaic failed, the University told Jackson that it wanted to remove the Tiger Spot, which had become a dangerous eyesore. Jackson, claiming that he has rights to prohibit the removal of the mosaic under the Visual Artist's Rights Act of 1990, 17 U.S.C. § 106A ("VARA"), refused to consent to the removal. Now, Jackson brings this action seeking an injunction "to prevent the University from not maintaining and protecting" the Tiger Spot, damages for the deterioration of the Tiger Spot, and a claim for an accounting of certain funds collected in association with the Tiger Spot.

Jackson's claims fail because the University, as an instrumentality of the State of Missouri, is immune from suit pursuant to the 11th Amendment to the United States Constitution. Moreover, VARA does not apply to Jackson because the Tiger Spot is (1) not a

1

"work of visual art" within the protection of VARA, and (2) is a site-specific piece of art, to which VARA "does not apply at all."

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001) (*quoting* Neitzke v. Williams, 490 U.S. 319, 326–27 (1989)).

A complaint must be dismissed for failure to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560 (2007) (abrogating the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). A petitioner need not provide specific facts to support his allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008), *cert. denied,* 129 S.Ct. 222 (2008) (*quoting* Twombly, 550 U.S. at 555–56 & n. 3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. Kottschade v. City of Rochester, 319 F.3d 1038, 1040 (8th Cir. 2003). Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. Twombly, 550 U.S. at 555 (internal citations omitted).

"To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content ... allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" Cole v. Homier Dist. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010) (*quoting* Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Id. (*quoting* Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005)). Finally, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. Id. (*quoting* Iqbal, 129 S.Ct. at 1950).

## PLAINTIFF'S ALLEGATIONS[1]

Plaintiff is an artist who resides in Boone County, Missouri. Complaint ¶ 1. The University of Missouri is located in Columbia, Boone County, Missouri. Id. ¶ 3. Plaintiff brings his claims under the VARA, 17 U.S.C. § 106A. Id. ¶ 4.

Plaintiff arranged to create the "Tiger Spot," which is a mosaic consisting of glass tiles portraying the image of a Tiger. Id. at ¶ 10. The Tiger is the mascot and symbol of the University of Missouri. Id. ¶ 11. The Tiger Spot mosaic is 30 feet in diameter and is installed into the Lowry Mall, in front of the library on the campus of the University of Missouri. Id. at ¶ 12-14.

The Tiger Spot mosaic consists of three layers: a first layer of one inch thick concrete in which glass tiles are embedded portraying the Tiger image; a second layer, used to bind the first and third layers together; and a third layer, which is a four foot thick concrete pad set poured into the ground to securely anchor the Tiger Spot mosaic to the ground. Id. ¶ 18. Plaintiff's

---

[1] For purposes of this motion, plaintiff's allegations are to be regarded as true. Defendant disputes many of these allegations and reserves the right to fully answer them should this case survive this motion.

Case 2:11-cv-04023-MJW   Document 6   Filed 04/13/11   Page 8 of 25

complaint describes in great detail, at paragraphs 19-32, how Plaintiff constructed the Tiger Spot. Id. ¶ 19-32. Construction started with the digging of an enormous hole in the middle of Lowry Mall, deep enough for a concrete pad 30 feet in diameter and four feet thick. Id. ¶ 37. Plaintiff created, in his studio, over 200 2 foot (2X2) sections of colored glass tiles, embedded in 1 inch of DiamondCrete, a type of concrete. Id. ¶¶52-59. He then troweled Laticrete concrete on top of the 30 foot concrete pad to serve as a mastic. Id. ¶ 62. Then the 2X2 foot sections of DiamondCrete, imbued with the glass tiles, "were placed on top of the layer of Mastic to bind them to the concrete pad." Id. ¶ 63. He then used additional tiles and DiamondCrete "to bind the sections to each other." Id. ¶ 65.

Plaintiff alleges that the Tiger Spot has become damaged due to the effects of improper concrete curing, weather, water, vandalism, drainage, and other purported causes. Plaintiff acknowledges that the Tiger Spot, in its present condition, is distorted and mutilated. Id. ¶ 137-140. The University has placed a tarp over the Tiger Spot, id. ¶ 123, and erected a series of posts and chains around the damaged, distorted and mutilated Tiger Spot. Id. ¶ 102-08.

## ARGUMENT

## I. UNIVERSITY IS IMMUNE FROM SUIT FOR ALL COUNTS IN THIS ACTION AND THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION

Defendant University is the state university of Missouri, established by Article IX, Section 9 of the Missouri Constitution, and is a public corporation organized and existing pursuant to section 172.020 R.S.Mo. Cum. Supp. 2009. Plaintiff admits in his Complaint that the defendant is a "public body corporate and politic created under and by virtue of the Constitution laws [sic] of the State of Missouri." Complaint, ¶ 2.

As a state entity, it is well-established that the University is entitled to sovereign immunity from suit in federal court. *See, e.g.,* Sherman v. The Curators of the University of Missouri, 871 F. Supp. 344, 348 (W.D. Mo. 1994) (holding that the state university, as an instrumentality of the State of Missouri, enjoys Eleventh Amendment protection from suit for breach of contract and promissory estoppel).

The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. Kokkonen v. Guardian Life Inc., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed. 2d 391 (1994). Plaintiff is unable to sustain this burden, because the University has Eleventh Amendment immunity from suit for the reasons set forth herein, and this Court therefore lacks subject matter jurisdiction over these claims.

**A.     Eleventh Amendment Sovereign Immunity from Counts I and II**

Counts I and II are based upon VARA, which was enacted in 1990 as an amendment to the Copyright Act. Kelley v. Chicago Park Dist., 2011 WL 501161, *7 (7th Cir., February 15, 2011). A long line of cases have uniformly held that states enjoy 11th Amendment immunity from actions under the Copyright Act, specifically including claims under VARA. *See infra,* cases cited at pp. 9-10.

A review of those decisions starts with looking at them in the context of the legislative history of the Copyright Remedy Clarification Act ("CRCA"). The CRCA, enacted in 1990, was Congress's attempt to override the State's Eleventh Amendment immunity from suit under the Copyright Act, following the U.S. Supreme Court's plurality holding in Pennsylvania v. Union Gas Co., 491 U.S 1 (1989).

In that decision, the Court found that Congress may abrogate the State's Eleventh Amendment immunity if it evinces clear intent to do so in its legislation, and Congress may

abrogate that immunity under its Article I Commerce Clause powers. Recognizing that the Copyright Act at that time contained no language specifically evincing an intent to override the state's sovereign immunity from suit, Congress enacted the CRCA. *See,* Senate Report No. 101-305, 101st Cong., 2d Sess. 8 (1990)

The CRCA was enacted with the following language:

"Any State, any instrumentality of a State, and any officer or employee of the State or instrumentality of a State acting in his or her official capacity shall not be immune, under the Eleventh Amendment of the Constitution of the Untied States or under any other doctrine of sovereign immunity, from suit in Federal Court by any person, including any governmental or nongovernmental entity, for violation of any of the exclusive rights of a copyright owner." 17 U.S.C. § 511(a)

However, six years after the CRCA was enacted, the U.S. Supreme Court overruled its decision in Pennsylvania v. Union Gas, and handed down Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed. 2d 252 (1996). In Seminole Tribe, the Supreme Court held that even if Congress expressed a clear intent to abrogate the State's Eleventh Amendment immunity, it could not do so by enacting legislation under its Article I powers. Id. at 54. The Court ruled that the federal courts' jurisdiction, as set out and limited in Article III of the Constitution, could not be expanded by legislation enacted under Article I powers. Id. The effect of this significant decision, along with those discussed below, has been to invalidate the CRCA's attempt to abrogate the State's immunity from suits under the Copyright Act, because as the cases below illustrate, the CRCA and its companion statutes, were enacted under Congress's Article I powers.

Three years after handing down Seminole Tribe, the U.S. Supreme Court applied that decision and reinforced the State's sovereign immunity from suit in two intellectual property cases involving the patent and trademark companion statutes to the CRCA. *See,* Florida Prepaid Postsecondary Education Expense Bd. v. College Savings Bank, 527 U.S. 627, 119 S.Ct. 2199,

144 L.Ed. 2d 575 (1999); College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd[2]., 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). The Court struck down the Patent and Plant Variety Protection Remedy Clarification Act of 1992, ("Patent Remedy Act"), and the Trademark Remedy Clarification Act of 1992, ("TRCA"), which contained express language purporting to override the State's Eleventh Amendment immunity. Florida Prepaid, supra, 527 U.S. at 631; College Savings, supra, 527 U.S. at 668.

Citing Seminole Tribe as well as its other precedents on Eleventh Amendment immunity, the U.S. Supreme Court in College Savings reiterated the holding that there are only two instances in which an individual may overcome Eleventh Amendment immunity and sue a State;

> First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment – an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed. 2d 614 (1976). Second, a State may waive its sovereign immunity by consenting to suit. Clark v. Barnard, 108 U.S. 436, 447-448, 2 S.Ct. 878, 27 L.Ed. 780 (1883)." College Savings v. Florida Prepaid, supra, 527 U.S. at 670.

**B.       Statutes Not Enacted Pursuant to Fourteenth Amendment**

In both Florida Prepaid and College Savings, the Court addressed the first test of an effective abrogation of State's Eleventh Amendment; whether these statutes were enacted pursuant to the Fourteenth Amendment. In both cases, the Court found that they were not. Florida Prepaid, supra, 527 U.S. at 647-648; College Savings v. Florida Prepaid, supra, 527 U.S. at 673-675.

In Florida Prepaid, the Court wrote: "Though patents may be considered 'property', the legislative record provides little support for the proposition that Congress sought to remedy a Fourteenth Amendment violation in enacting the Patent Remedy Act." Florida Prepaid, 527 U.S. at 642. In College Savings, the Court held that there is no property right in freedom from false

---

[2] Florida Prepaid Postsecondary Education Expense Board, the defendant in both cases, was a state agency that administered tuition prepayment contracts. Id. 671.

advertising or securing business interests, and where there is no deprivation of property, the TRCA could not have been enacted under the Fourteenth Amendment. College Prepaid, supra, 527 U.S. at 673-675. Therefore, applying its decision under <u>Seminole Tribe</u>, the Court held that the statutes did not constitutionally abrogate the State's sovereign immunity. <u>Florida Prepaid v. College Savings</u>, supra, 527 U.S. at 647-648; <u>College Savings v. Florida Prepaid</u>, supra, 527 U.S. at 675.

### C.    No Waiver of State's Immunity

The Court then addressed the second test of an effective abrogation of Eleventh Amendment immunity; whether the Florida Prepaid Board had waived its Eleventh Amendment immunity. The Court found that the Florida Prepaid Board had not waived its immunity from suit, noting that the Court's test for determining whether a State has waived its immunity from federal court jurisdiction "is a stringent one." <u>College Savings v. Florida Prepaid</u>, supra, 527 U.S. at 675. Plaintiff was unable to show that the State either, (1), voluntarily invoked the Court's jurisdiction, or (2), made a "clear declaration" that it intended to submit itself to the Court's jurisdiction. Id. 675-676, 687. The Court then went further and rejected the "constructive waiver" argument of the plaintiff. Id. 686. The Court's finding that no effective waiver was demonstrated was applied to the <u>Florida Prepaid</u> case as well. <u>Florida Prepaid</u>, supra, 527 U.S. at 635.

These U.S. Supreme Court cases provide the framework for the argument that the CRCA failed to abrogate the State's immunity from actions under the Copyright Act as the cases set forth below illustrate.

**D.     CRCA Does Not Abrogate Eleventh Amendment Immunity**

Following the U.S. Supreme Court's hand down of the decisions in <u>Florida Prepaid</u> and <u>College Savings</u>, other federal courts have had the opportunity to consider whether the Copyright Remedy Clarification Act ("CRCA") validly abrogated the State's Eleventh Amendment immunity from suit under the Copyright Act.

In <u>Infomath v. University of Arkansas</u>, 633 F. Supp. 2d 674, 679. (E.D. Ark. 2007), the Court noted that, though the U.S. Supreme Court has not specifically ruled whether the CRCA is a valid exercise of Congress's power, it has found, under <u>Florida Prepaid</u> and <u>College Savings</u>, that the TRCA and the Patent Remedy Act are unconstitutional, and that those statutes are nearly identical to the CRCA. Id. 679. It also noted that other courts who have examined the CRCA have held that it is an unconstitutional attempt to abrogate the State's Eleventh Amendment immunity from suits under the Copyright Act. Id. 680, citing <u>Rodriguez v. Texas Comm'n on the Arts</u>, 199 F.3d 279 (5th Cir. 2000), <u>Chavez v. Arte Publico Press</u>, 204 F.3d 601 (5th Cir. 2000), <u>DeRomero v. Inst. Of Puerto Rican Culture</u>, 466 F.Supp. 2d 410 (D.P.R. 2006); <u>Hairston v. N.C. Agric. & Tec. State Univ.</u>, No. 04 Civ. 1203, 2005 WL 2136923 (M.D.N.C. Aug. 05, 2005).

In <u>Chavez. v. Arte Publico Press</u>, the Fifth Circuit followed the analysis of the <u>Florida Prepaid</u> decision, in finding that the CRCA was an unconstitutional use of Congress's power, because it was not enacted pursuant to the Fourteenth Amendment or in response to a pattern of unconstitutional infringement of copyrights by the states. <u>Chavez v. Arte Publico Press</u>, supra, 204 F. 3d at 607-608. Other federal courts have also held that the CRCA failed to abrogate the State's Eleventh Amendment immunity. *See*, <u>Salerno v. City University of New York</u>, 191 F.Supp. 2d 352 (S.D.N.Y. 2001); <u>Marketing Inf. Masters, Inc. v. Bd. of Trustees of CA State</u>

Univ., 552 F.Supp.2d 1088 (S.D. Cal. 2008); Jacobs v. Memphis Convention, 710 F.Supp.2d 663 (W.D.Tenn. 2010); Romero v. Ca. Department of Transportation, 2009 WL 650629 (C.D. Cal., March 12, 2009), (specifically holding that claim under Visual Artists Right Act is barred by Eleventh Amendment, notwithstanding CRCA). *See also,* Wilcox v. Career Step, 2010 WL 4968263 (D. Utah, Dec. 1, 2010), in which the Court noted that "federal district courts in and outside of the Fifth Circuit have been uniform in following Chavez." Id. p. 5; National Association of Boards of Pharmacy v. Board of Regents of the University System of Georgia, 633 F.3d 1297 (11th Cir., 2011), affirming the lower court holding that Congress does not have authority to abrogate the States' sovereign immunity through the CRCA under its Article I power. Id. p. 31.

These decisions uniformly hold that a state entity such as the University of Missouri retains its sovereign immunity from suit under the Copyright Act. Plaintiff's claims should therefore be dismissed absent some pleading and proof of a waiver of this immunity. However, in contravention of his Iqbal obligations, Plaintiff fails to plead that the University has waived its Eleventh Amendment immunity, and therefore provides no basis for the Court to find that the University has done so.

### E.    Eleventh Amendment Sovereign Immunity from Count III

Plaintiff does not state a basis for his claim for relief under Count III, but states instead that he "deserves a proper accounting" of funds related to Tiger Spot. Complaint, ¶166. The University enjoys sovereign immunity from this claim as well, and Plaintiff makes no attempt to plead otherwise. The Court therefore lacks subject matter jurisdiction over all of the claims in the Complaint, and the matter should be dismissed in its entirety.

## II. IN THE ALTERNATIVE, COUNTS I AND II SHOULD BE DISMISSED BECAUSE VARA DOES NOT APPLY TO THE TIGER SPOT

The University's 11th Amendment immunity disposes of all of the claims in the Complaint. Alternatively, however, Counts I and II fail to state a claim upon which relief may be granted because the Tiger Spot does not fall within VARA's protection because (1) it is not a "Work of Visual Art" as defined in VARA and (2) it is a site-specific piece of art, to which VARA does not apply at all.

Plaintiff can state a claim, of course, only if the Tiger Spot falls within the scope of VARA. VARA, however, applies only to very limited, specific "works of visual art," which include only "a painting, drawing, print or sculpture" or "a still photographic image produced for exhibition purposes only." 17 U.S.C. § 101. The Tiger Spot, which is a mosaic concreted into the ground in Lowry Mall, is none of these things. Moreover, by its very nature, the Tiger Spot is "site-specific" art, meaning that it cannot exist anywhere other than where it is. In the straightforward holding of the First Circuit, "VARA does not apply to site-specific art at all." Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128, 143 (1st Cir. 2006).

### A. The Tiger Spot is Not a "Work of Visual Art."

VARA was adopted in 1990 as an amendment to the Copyright Act. Kelley v. Chicago Park Dist., 2011 WL 501161 (7th Cir., February 15, 2011). Its purpose was to protect the "moral rights" of "certain visual artists and the works of art they create." Carter v. Helmsley-Spear, Inc., 71 F.3d 77, 83 (2nd Cir. 1995), quoting H.R.Rep. No. 514 at 5.

"With numerous exceptions, VARA grants three rights: the right of attribution, the right of integrity and, in the case of works of visual art of "recognized stature," the right to prevent destruction." Id. In this action, artist Jackson is alleging that his right of integrity under VARA

has been violated by the deterioration of the Tiger Spot due to the University's alleged failure to maintain and protect it.

Jackson's claim fails because VARA applies only to a "work of visual art." 17 U.S.C. § 106A(a). A work of visual art is defined in Section 101 of the Copyright Act as "(1) a painting, drawing, print or sculpture ... or (2) a still photographic image produced for exhibition purposes only." 17 U.S.C. § 101. This definition is intentionally limited and narrow, and does not include Jackson or his mosaic.

"Not every artist has rights under VARA, and not everything called 'art' is protected by such rights." Pollara v. Seymour, 344 F.3d 265, 269 (2nd Cir. 2003). The court continues:

> VARA protects only things defined as "work[s] of visual art," see id. §106A(a) – a definition that is "a critical underpinning of the limited scope of the [Act]." H.R.Rep. No. 101-514, at 1990 U.S.C.C.A.N. 6915, 6920-21; see also id. at 6919 (stating that congressional debate "revealed a consensus that the bill's scope should be limited to certain carefully defined types of works and artists, and that if claims arising in other contexts are to be considered, they must be considered separately"); id. at 6921 (quoting Representative Edward Markey, cosponsor of the bill that became VARA, as stating that the "legislation covers only a very select group of artists").

344 F.3d at 269. "As representative Markey testified, 'I would like to stress that we have gone to extreme lengths to very narrowly define the works of art that will be covered*** This legislation covers only a very select group of artists.'" H.R. Report 101-514, at 10-11.

VARA's definition of "work of visual art" is much more limited than the definition of works generally protected under the Copyright Act. Kelley v. Chicago Park Dist., 2011 WL 501161 (7th Cir., February 15, 2011).

> VARA's definition of 'work of visual art' is limited to a narrow subset of this broader universe of 'pictorial, graphic and sculptural works' that are otherwise eligible for copyright; only a select few categories of art get the extra protection provided by the moral rights concept. 5 PATRY § 16:7 (2010) ("Protected 'works of visual art' is a narrow subcategory of 'pictorial, graphic, and sculptural works' protected in section 102(a)(5).")

Kelley, at *8; see also, Cheffins v. Stewart, 2011 WL 1233378, *3 (D.Nev. March 29, 2011) ("A broad construction of 'work of visual art'...would be at odds with Congress' intent to limit the application of VARA.") If the Tiger Spot is not a "work of visual art," then it does not fall under VARA. Teeter v. Glass Onion, Inc., 2010 WL 2772198, *16 (W.D. Mo., July 12, 2010) (Gaitan, J.) (dismissing a claim under VARA because the digital images at issue were "not within the definition of a "work of visual art" under VARA....")

The Tiger Spot, a two-dimensional glass-tile mosaic incorporated by concrete into a pedestrian mall in the middle of a university campus, is not a "painting, drawing, print, sculpture" or "photograph." Notably, the Complaint alleges no facts which would bring the Tiger Spot within any of these definitions, as required by the Twombly/Iqbal standard. Plaintiff merely makes a conclusory allegation that Tiger Spot is a "Work of Visual Art." Complaint, ¶ 7. This is insufficient to meet his pleading burden. However, even under a more liberal pleading standard, Jackson cannot plead his mosaic into the scope of VARA.

Anticipating what Jackson might plead in an attempt to bring the Tiger Spot within the scope of VARA, any attempt to contend that Tiger Spot is a "painting," "drawing," "print" and "photograph" does not even merit discussion. Jackson is then left to argue that his mosaic is a "sculpture." This effort, however, will fall short.

The Seventh Circuit, in Kelley, recently rejected the idea that the term "sculpture" can be read to mean anything other than a traditional, three dimensional work. The district court in Kelley had found that a wildflower garden (called "Wildflower Works") which plaintiff had had designed and installed in Chicago's Grant Park qualified as a "sculpture" and a "painting" under VARA. Defendant did not challenge this finding on appeal, which the Seventh Circuit called

"an astonishing omission." Id. at *9. The district court's conclusion so offended the appellate court that the Seventh Circuit felt compelled to address the issue anyway:

> VARA's definition of 'work of visual art' operates to narrow and focus the statute's coverage....the overall structure of the statutory scheme clearly illuminates the limited effect of this definition. Copyright's broad, general coverage extends to 'original works of authorship,' and this includes 'pictorial, graphic, and sculptural works." 17 U.S.C. (a)(5). The use of the adjectives 'pictorial' and 'sculptural' suggests flexibility and breadth in application. In contrast, VARA uses the specific nouns "paintings" and "sculpture." To qualify for moral-rights protection under VARA, Wildflower Works cannot just be 'pictorial' or 'sculptural' in some aspect or effect, it must actually be a 'painting' or a 'sculpture.' Not metaphorically or by analogy, but *really*.

Id. at *9.

The Tiger Spot, which is a two dimensional mosaic presentation of a tiger, is certainly not a sculpture. Kelley quotes the Oxford English Dictionary definition of "sculpture": "the process or art of carving or engraving a hard material so as to produce designs or figures in relief, in taglio, or in the round....the production of figures in the round or in relief, either by carving, by fashioning some plastic substance, or by making a mould for casting in metal..." Id. at fn 7, *18.

To be a sculpture, a work must be a three dimensional creation. For example, Merriam-Webster dictionary defines "sculpture" as "a three-dimensional work of art (as a statue)." Princeton's wordweb, www.wordnetweb.princeton.edu, provides the following definition: "creating figures or designs in three dimensions." Dictionary.com defines "sculpture" as "the art of carving, modeling, welding, or otherwise producing figurative or abstract works of art in three dimensions, as in relief, intaglio, or in the round." VARA's legislative history states: "the term 'sculpture' includes, but is not limited to, castings, carvings, modelings and constructions." H.R. Report 101-514, Report from Committee on the Judiciary, June 1, 1990, at 11.

The Tiger Spot cannot be considered a "sculpture" or any other "work of visual art." Plaintiff's claims under VARA therefore fail to state a claim upon which relief may be granted and should be dismissed.

**B.** **The Tiger Spot is Site-Specific Art, So VARA Does Not Apply**.

1. **The Tiger Spot is Site-Specific Art**.

By its very nature, the Tiger Spot cannot exist anywhere except Lowry Mall. Artistically, it is a Bengal Tiger, the University's mascot, presented in the heart of the campus, and presented to the University students as they come and go from the main library. Physically, it is wholly integrated in Lowry Mall, embedded in a four foot slab of concrete which was poured into a hole dug in the middle of this pedestrian plaza. Although the Tiger Spot has crumbled and become distorted, the piece of art itself cannot be removed from Lowry Mall without digging it out of the ground – an act which would further damage it. It is, in short, the quintessential example of "site-specific art."

Site-specific art is described in various ways. The Executive Director of the Urban Arts Institute of the Massachusetts College of Art described it as follows:

> [T]oday the concept of site-specificity" is the "rallying cry" of public artists who seek to create a peace that derives enhanced meaning from its environment. Much of modern sculpture does not exist separate from its context, but rather integrates its context with the work to form, ideally, a seamless whole.

Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128 (1st Cir. 2006) at 134 (quoting Richard Barreto, describing the sculpture garden at issue in that case). It has also been described by the Guggenheim Museum of Modern and Contemporary International Art as follows:

> [A]n artist's intervention in a specific locale, creating a work that is integrated with its surroundings and that explores its relationship to the topography of its locale, whether indoors or out, urban, desert, marine or otherwise … site-specific art is meant to become part of its locale, and to restructure the viewer's conceptual and perceptual experience of that locale through the artist's intervention.

Quoted in *Phillips Has Left VARA Little Protection for Site-Specific Artists*, 16 J. Intell. Prop. 297, 300 (2008-2009).

"Thus, site-specific art involves more than just the physical creation of the artist; the artist is striving to create a relationship between his artistic creation and its surroundings....Site-specific work ... is created when artists incorporate their creation with any surrounding, whether it be a public area or a privately owned property." Id. at 300. "Site-specific art is art whose placement in a three-dimensional context is integral to the expression and meaning of the art work itself." *The Should-It-Stay or Should-It-Go Spotlight: Protection of Site-Specific Art Under VARA,* 123 DePaul J.Art. & Ent. Law 101, 112 (citation omitted). "The work is 'conceived and created in relation to the particular conditions of a specific site.' Id. It is "designed, crafted and placed for maximum effect in a particular spot...." Id.

The First Circuit summarized the practical meaning of site-specific art as follows: "Essentially, for site-specific art, the location of the work is an integral element of the work. Because the location of the work contributes to its meaning, *site-specific art is destroyed if it is moved from its original site*." Phillips, 459 F.3d at 134 (emphasis added). Relying on an affidavit submitted in the district court, the Phillips court continued: "[t]his view contrasts with so-called 'plop-art' where a separately conceived art object is simply placed in a space." Id. "A piece of plop-art does not incorporate its surroundings. Site-specific art is the opposite of plop-art." Id. In site-specific art, "the artist incorporates the environment as one of the media with which he works." Id. at 134, quoting Phillips v. Pembrooke Real Estate, Inc., 288 F.Supp. 2nd 89, 95 (D. Mass. 2003) ("Phillips I"). "By definition, site-specific art integrates its location as one of its elements. Therefore, the removal of site-specific work from its location necessarily destroys the work of art." Phillips, 459 F.3d at 140.

The site-specific art analyzed in <u>Phillips</u> was a sculpture garden across from Boston Harbor which incorporated the harbor and it surroundings as part of the overall artistic impression. The artist attempted to draw and reflect upon those themes through the various sculptures, topiary, pathways and other elements of the sculpture garden at issue.

In this case, absent Herculean efforts, the Tiger Spot permanently resides on Lowry Mall. It cannot physically be moved and remain intact. Tiger Spot is placed on Lowry Mall for a reason: the University is the home of the Tigers, and the Tiger Spot celebrates that history and tradition. It is a very prominent feature in a very prominent part of the campus. Imagine how different Tiger Spot would be if it were a small painting hanging in a gallery in Lawrence, Kansas, and its status as site-specific art becomes undeniable.

Art cannot be more integrated into its surrounding environment than if it is concreted in place. Plaintiff cannot seriously contest that the Tiger Spot is fully integrated into its surrounding, both physically and in the artist's conception. Accordingly, it is a site-specific work.

## 2. "VARA Does Not Apply to Site-Specific Art At All."

After detailed analysis, the First Circuit held: "VARA's plain language also requires us to reject the district court's approach to site-specific art. VARA does not protect site-specific art and then permit its destruction by removal from its site pursuant to the statute's public presentation exception. VARA does not apply to site-specific art at all." <u>Phillips</u>, 459 F.3d at 143. "We have simply concluded, for all of the reasons stated, that the plain language of VARA does not protect site-specific art. If such a protection is necessary, Congress should do the job. We cannot do it by re-writing the statute and the guides of statutory interpretation." <u>Id.</u>

This holding makes perfect sense. If site-specific art is protected under VARA, the artist would gain control and practical ownership of the real estate upon which the art is located. This concept troubled the First Circuit: "Once a piece of art is considered site-specific, and protected by VARA, such objects could not be altered by the property owner absent consent of the artist. Such a conclusion could dramatically affect real property interests and laws." Id. at 142. Relying upon the Massachusetts Supreme Court's decision in a related case interpreting the Massachusetts moral rights statute, the court observed: "Any other interpretation of VARA would create a "radical consequence for owners of land, that the Legislature directly averted for owners of buildings. Specifically, rights afforded artists would encumber private and public land with restrictions lasting for the life of the artist plus 50 years...." 819 N.E. 2nd at 584-85, *quoted at* Phillips, 459 F.3d at 142.

This is precisely the problem which Jackson's claim presents. The University owns the land into which Tiger Spot is embedded. The Tiger Spot is now a dangerous eyesore which needs to be removed in whatever fashion possible. Students have complained about Tiger Spot for years, and have even petitioned to have it removed. It presents a physical danger and esthetic offense to all who pass by. Yet Jackson claims that he has a perpetual right under VARA to keep Tiger Spot where it is, regardless of its condition. Jackson's theory, if accepted, would mean that VARA gives him long-term control over, and a quasi-ownership interest in, the very heart of the University's campus.

This is exactly the circumstance which the First Circuit feared. Jackson believes he is in a position to tell the University what it can and cannot do with its own property, even when that property is a crumbling eyesore and a physical danger. This is not at all what VARA intended,

nor could it be constitutional. For sound reasons grounded in statutory language, common law property rights, and common sense, "VARA does not apply to site-specific art al all."

## CONCLUSION

At one time, Tiger Spot was a striking source of pride for the University and its students. Unfortunately, due to the passage of time, effects of weather, and other factors attributable to decisions made by artist Jackson, the Tiger Spot is now, as Jackson's Complaint acknowledges, distorted, mutilated and damaged.

The doctrine of sovereign immunity bars this lawsuit entirely. Even absent sovereign immunity, plaintiff has no legitimate claims. The sooner this lawsuit is dismissed, the sooner the University can address the ongoing problems caused by Tiger Spot and move forward to create a place of beauty again in Lowry Mall. Accordingly, the University respectfully moves this court to dismiss plaintiff's Complaint in its entirety.

Respectfully submitted,

HUSCH BLACKWELL LLP

/s/ Jeffrey J. Simon
William B. Kircher     MO# 18743
Jeffrey J. Simon       MO# 35558
4801 Main Street, Ste 1000
Kansas City, MO 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
bill.kircher@huschblackwell.com
jeff.simon@huschblackwell.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was automatically forwarded this 12th day of April, 2011 by the Court's ECF system to:

Marvin Tofle
Tofle & Oxenhandler
220 N. 8th Street
Columbia, MO 65201
Attorneys for Plaintiff

/s/ Jeffrey J. Simon
Attorney