IN THE UNITED STATES FEDERAL DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PAUL JACKSON, <br><br> Plaintiff, <br><br> Vs. <br><br> THE CURATORS OF THE UNIVERSITY OF MISSOURI, A Public Body Corporate and Politic, <br><br> Defendant. | Case No.: 2:11-4023-CV-C-MJW <br><br> PLAINTIFF DEMANDS TRIAL BY JURY |

<u>PLAINTIFF'S SUGGESTIONS
IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

<u>Statement of Facts</u>

Plaintiff does not agree with the Defendant's description of the allegations contained in the Plaintiff's Complaint. Plaintiff's Complaint contains the following allegations:

Paragraph 6: alleges that Plaintiff is an artist.

paragraph 7: alleges that the Tigers Spot Is a Work of Visual Art under VARA.

Paragraph 8: Alleges That the Tigers Spot Is a Work of Recognize Stature.

Paragraph 10: alleges that the Tigers Spot is a mosaic portraying the image of a tiger.

Paragraph 18: alleges that the Tigers Spot consists of three layers with the top layer being a 1 inch thick layer of concrete embedded with glass tiles portraying the tiger image.

Paragraphs 60 – 68: allege that the University of Missouri did not prepare the pad in accordance with the Artist's specifications.

Paragraphs 69 – 80: outlines problems caused by the University's removal of a tent over the site while raining which prevented the Tiger Spot from setting and curing properly.

Paragraphs 81 – 89: outlines maintenance and repairs made by the Plaintiff and that such maintenance and repairs were necessitated by the Defendant.

Paragraphs 90 – 94: outlines damage to the Tigers Spot from vandalism and the Defendant's refusal to adequately secure the site.

Paragraphs 90 – 101: outlines the Defendant's failure to provide adequate drainage to the site.

Paragraphs 102 – 122: outlines the Defendant's decision to install bollards around the Tigers Spot by use of a jackhammer and damage caused to the Tigers Spot thereby.

Paragraphs 123 – 133: outlines the Defendant's refusal to provide proper maintenance and repair to the Tiger spot and in paragraph 126 alleges that without adequate maintenance and repair the Tigers Spot will be damaged and destroyed beyond repair.

Paragraph 128: alleges that the actions of the Defendant are damaging the Artist's honor and reputation.

Paragraph 139: alleges that the Defendant's distortion, mutilation and other modification of the Tigers Spot was intentional or grossly negligent.

## Defendant Is Not an Instrumentality of the State

The Defendant asserts that the Plaintiff's claims are barred by the Eleventh Amendment. The Plaintiff asserts that the Eleventh Amendment is not applicable to the claims raised by the Plaintiff because the University of Missouri is not an instrumentality of the State of Missouri.

The federal courts last considered whether the University of Missouri is an instrumentality of the state in 1994. *Sherman v. The Curators of the University of Missouri, 870 F. Supp. 344 (W. Dist. Missouri 1994).* Much has changed since that time. Plaintiff refers the Court to the University of Missouri website where it makes its detailed and public disclosure of its budget. See, "FY11 MU Budget Snapshot." at http://mubudget.missouri.edu. Plaintiff has attached Exhibit A which is an excerpt from the web site that sets out the State's contribution to the University of Missouri and Exhibit B which is an excerpt that sets out the amount of federal funding.

In *Sherman v. The Curators of the University of Missouri, 870 F. Supp. 344 (W. Dist. Missouri 1994)* the District Court quoted from *Greenwood v. Ross, 778 F. 2d 448 (8th Cir. Arkansas 1985)*, "Each state University must be considered on the basis of its own particular circumstances and determining if the University is a state instrumentality that enjoys the protection of the Eleventh Amendment." The Eighth Circuit has identified two <u>critical</u> factors to be examined in making this determination. *Sherman v. Curators of the University of Missouri, 16 F.3d 860, 864 (8th Cir. 1994).* (Emphasis added). Those factors are the University's level of autonomy and, most importantly, whether any judgment rendered against the defendant will be paid by state funds. (Citations omitted). <u>Id</u>. at p. 346.

The District Court went on to note that the state Constitution requires the legislature to "adequately maintain" the University. In 1994, the District Court noted that the state of Missouri contributed 31.3% of the University's total revenues. Id. at p. 346. The District Court held in 1994 that any judgment against the University will ultimately be derived from the state treasury and therefore the University is entitled to Eleventh Amendment immunity. Id. at p. 348.

In *Romero v. Institute of Puerto Rican culture, 466 F. Supp. 2d 410 (Dist. Puerto Rico 2006)* the court noted that, Whether an entity is an arm of the state and thus protected by the states' Eleventh Amendment immunity is a question of federal law. Id. at p. 419. However, since "even without an explicit promise, the Commonwealth may have assumed this obligation [to pay for the entity's debts] by binding itself to provide virtually all of the funds that [the entity] needs to operate..." Id. at p. 421 .... The court held that the percentage of the [the entity]'s budget that the Commonwealth provides is so sizable (96%) so as to 'virtually provide' all of the [the entity]'s funds Id. at p. 422

In *Infomath, Inc. v. University of Arkansas, 630 F. Supp. 2d 674 (Dist. Arkansas 2007)* the District Court quoted that "Courts typically look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury." (Citations omitted). Id. at p. 677.

The University of Missouri's current budget is approximately $1.9 billion. The University's website reveals that of this amount approximately $179 million is contributed by the state of Missouri. It can no longer be said that the State "adequately maintains" the University of Missouri. This amount is less than 10% then the total University budget. Federal contributions amount to $370 million or almost 20% of the University's total

4

budget. Accordingly, at this time, the University is more of an instrumentality of the federal government than the State government. Therefore, Plaintiff submits that *Sherman* is no longer controlling and that the University of Missouri is no longer an instrumentality of the State of Missouri for purposes of the analysis of Eleventh Amendment immunity. Thus, the Eleventh Amendment is no bar to the Plaintiff's claims in this case.

No Eleventh Amendment Immunity Because No State Remedies

If the Court finds that the University of Missouri is an instrumentality of the State of Missouri, in order for a state to constitutionally avail itself of Eleventh Amendment immunity, the state must provide "adequate" remedies under state law.

In *Jacobs v. Memphis Convention and Visitors Bureau, 710 F. Supp. 2d 663 ( W. Dist. Tennessee 2010)* the District Court noted that the United States Supreme Court in *Florida Prepaid* made clear that a State's infringement of a patent is not a per se constitutional violation. (Citations omitted). The United States Supreme Court stated "Instead, only where the state provides no remedy, or only inadequate remedies, to injured patent owners for its infringement of their patent could a deprivation of property without due process result. (Emphasis added). Id. at p. 673 – 674.

In *Marketing Information Masters, Inc. v. The board of Trustees of the California State University System, 552 F. Supp. 2d 1088 (S. Dist. CA. 2008)* the court stated "According to the Fifth Circuit in *Chavez*, the relevant inquiry for determining whether the CRCA constitutes a valid exercise of Congress's Fourteenth Amendment powers is: (1) whether there is a pattern of copyright infringement by states; (2) whether adequate state remedies for copyright infringement exists; and (3) the coverage of the legislation. Id. at

p. 1094. *Chavez v. Arte Publico Press, 204 F. 3d 601 (5th Cir. 2000); Pennington Seed, Inc. v. Produce Exchange No. 299, 457 F.3d 1334 (8th Cir. Mo. 2006).*

The Plaintiff's claims arise under VARA. The Plaintiff submits that the State of Missouri has provided no rights to the author of a work of visual art, no copyright protection nor any common law causes of action for the protection of the author of a work of visual art. Therefore, the State of Missouri's defense of Eleventh Amendment sovereign immunity fails under the facts and circumstances of this case.

## The Tiger Spot Is Protected by VARA

The Defendant argues in its Suggestions that the Tiger Spot is not a "work of visual art." The Defendant sites VARA as providing protection to "a painting, drawing, print or sculpture ..." The Defendant states that the Tiger Spot is a mosaic and that the Tiger Spot is "none of these things." However, Plaintiff submits that Defendant's assertion is not correct.

The Tiger Spot is a work of visual art and falls under the protection of VARA as "a painting, drawing, print or sculpture .... " 17 USC Section 101. The Congressional Record of VARA's legislative history instructs Courts to interpret the definition of a work of visual art as follows:

> use common sense and generally accepted standards of the artistic community in determining whether a particular work falls within the scope of the definition [of "work of visual art"]. Artists may work in a variety of media, and use any number of materials in creating their works. Therefore,

6

whether a particular work falls within the definition should not depend on the medium or materials used. *Phillips v. Pembroke Real Estate, Inc,. 459 F.3d 128, 136 (1ˢᵗ Cir. Mass. 2006)* quoting H.R. Rep. No. 101-514, at 6.

Again the Court is directed to consider the media and materials of the artist broadly and not interpret the five categories narrowly as art is a matter of creativity and imagination that seeks to extend traditional boundaries. As such the Tiger Spot exists in the grand tradition of visual art and is clearly included in the in the scope of VARA as a "drawing" and as a "sculpture."

Thus, the fact that the medium and materials consist of tiles embedded into a laticrete base does not prevent the Tiger Spot from simply being a drawing. In addition, the Tiger Spot is clearly included in the definition of a "sculpture" when VARA's legislative history is considered in making the determination.

The tiger mosaic is not merely a two dimensional representation of a Tiger as the Defendant asserts. The Tiger Spot does have three dimensions. The tiles embedded in the laticrete give the mosaic a three dimensional quality. While the Tiger Spot may not be capable of being seen in its three dimensions that is not a requirement for sculpture. A "relief" is a well recognized form of sculpture although it is not capable of being seen in 360 degrees. A relief is three dimensional in the same way that the Tiger Spot is three dimensional. The Congress's direction to consider the categories in their broader sense leads to the unmistakable conclusion that Tiger Spot is a work or visual art protected under several categories and is therefore exactly the type of work of visual art intended to be protected by VARA.

Several cases have dealt with mosaics and no case has excluded mosaics from the scope of VARA In *Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128 (1st Cir. Ct. App. Massachusetts 2006)* the artist designed and installed stone walls, granite stones inlaid into the Park's walkways, and other landscape design elements. Id. at p. 130-131. The First Circuit found that the works themselves were included under VARA (although the court found that they constituted site – specific art and thus not protected by VARA)

In *Carter v. Helmsley – Spear, Inc., 71 F. 3 d 77 (2nd Cir. Ct. App. N. Y. 1995)* the work of art consisted of "a variety of sculptural elements constructed from recycled materials, much of it metal, affixed to the walls and ceiling, and a vast mosaic made from pieces of recycled glass embedded in the floor and walls. Id. at p. 80. The Second Circuit found this work to come within the definition of a work of visual art. Id. at p. 84.

Thus, the Plaintiff has met his threshold burden of pleading sufficient facts to bring the Tiger Spot under the VARA definition of a work of visual art.

### The Tiger Spot is Not Site - Specific

The Plaintiff asserts that the Defendant is misapplying the phrase "site – specific" in the context of VARA. The Defendant seems to be arguing that the Tiger Spot is affixed to the ground and is therefore "site - specific" and does not fall under the protections of VARA. Plaintiff submits that this analysis is not correct.

It is correct that VARA does not apply to "site - specific" art. VARA does not even mention site – specific art.

> [S]ite – specific art ... is a subset of "Integrated art." A work of "integrated art" is comprised of two or more

physical objects that must be presented together as the artist intended for the work to retain its meaning and integrity. In a work of "site-specific" art one of the component physical objects is the location of the art. To remove a work of "site - specific" art from its original site is to destroy it. *Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128, 129 (1st Cir. Massachusetts 2006).*

Therefore, if site – specific art is removed from the site, the art it destroyed because the location is an element of the work of art itself. The point is that site – specific art is not physically destroyed by moving it but <u>artistically</u> <u>destroyed</u> because the location is an integral part of the art.

In *Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128 (1st Cir. Ct. App. Massachusetts 2006)* Phillips contracted to provide various art in a park near the Boston Harbor. He designed and installed ocean themed sculptures, walls, paths and various other ocean themed elements.

The Court noted that ".... for site – specific art, the location of the work is an integral element of the work. Because the location of the work contributes to its meaning, site-specific art is destroyed if it is moved him its original site. (Citations omitted) "it is clear that the community of respected American artists and art authorities regard crafted work and the site or sites specific artworks as an indivisible whole. The artists who create these works explain that the meaning and purpose behind the art lie squarely within its physical location." Id. at p. 134.

The work of visual art that was the subject of the Phillips case is site specific because it was created and placed in a location close to the ocean and its removal to some other location would destroy it as a work of art.

It should be noted here that VARA contains a "public presentation exception" that provides as follows:

> The modification of a work of visual art which is the result ot conservation, or of the public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless the modification is caused by gross negligence. 17 U.S.C. S 106(c)(2)

The public presentation exception defines the types of changes, such as those in lighting and placement, that do not constitute "destruction, distortion, or mutilation". Id. at p. 141. Thus, VARA allows a work of visual art to be moved without liability unless the work is damaged in the move as a result of gross negligence. The public presentation exception does not apply to site – specific art because VARA does not apply to site – specific art at all. *Phillips* at p. 129.

In *Bd. of Managers of Soho International Arts Condo. v. City of New York* 2003 U.S. Dist. LEXIS 10221, No. 01-1226, 2003 WL 21403333 at *19 *(S.D.N.Y. 2003) the Court stated that VARA's objective "is not ... to preserve a work of visual art *where* it is, but rather to preserve the work *as* it is". Id. at p. 138. The Plaintiff agrees with this statement and submits that it supports the Plaintiff's position that the <u>location</u> of the Tiger

Spot on the Lowry Mall is not an element of the work of art. Therefore, the Tiger Spot is not site – specific and, therefore, the Tiger Spot is entitled to the protections of VARA.

The Tiger Spot is not site – specific art because it does not and never was intended to incorporate the location or the surrounding environment as a part of the work of art. In fact, the Plaintiff created the Tiger Spot concept, the materials and the draft paper drawing of the Tiger Spot with no particular location in mind and it was only much later that the Defendant University offered the location on the Lowry Mall as a setting for the Tiger Spot.

On page 1 of its Suggestions, the Defendant stated that "the University told Jackson that it wanted to remove the Tiger Spot .... " This statement is not contained in the Plaintiff's complaint and neither are numerous other assertions contained in the Defendant's Suggestions and the Plaintiff will proceed likewise under the authority of *Romero*, *infra*. However, the Plaintiff submits that not only did the University offer to remove the Tiger Spot but the University offered to move it and display it at various other locations.

Clearly the University has recognized the ability of the Tiger Spot to be moved to another spot. Therefore, it is obvious from the Defendant's own acts and intentions that the Tiger Spot is not site – specific and can be moved without destroying the artistic essence of the work.

The University's desire to move the Tiger Spot was possible because the location is totally unrelated to the Tiger Spot as a work of visual art. It was not created with the location as a part of the work artistically. The Tiger Spot could be placed at many other locations without diminishing or destroying it as a work of art in any way. It could be

placed at the football stadium, the basketball arena, the Quadrangle or many other locations on the campus with no aesthetic destruction to the work. More than that, the Tiger Spot could be moved to other universities that have a Tiger mascot or to any other city, state or country where an amazing work of visual art would be appreciated.

The Plaintiff agrees with the University that the Tiger Spot could have been moved at one time without destroying it. After the University's program of neglect the Tiger Spot has been rendered seriously damaged and it remains to be seen if it can ever be restored.

The Defendant relies heavily on *Kelley v. Chicago Park Dist., 2011 WL 501161 (7th Cir., February 15, 2011)*. The claimed work of visual art in *Kelley* is a garden. It is one thing to equate a mosaic which is an image of the Tiger mascot of the University of Missouri to a drawing or a sculpture and a totally different thing to equate a garden to a drawing or a sculpture. It would be difficult to extend the *Kelley* case beyond its unique facts. Nevertheless, the Tiger Spot *really* is a drawing in tile and laticrete.

## Standard of Review

Plaintiff does not argue with the Defendant's Standard of Review. However, there are several points that the Plaintiff needs to emphasize.

In *Salerno v. City University of New York, 191 F. Supp. 2d 352 (S. Dist. N. Y. 2001)* the Court held that there is no heightened pleading requirement for copyright claims. Id. at p. 356.

In *Romero v. Institute of Puerto Rican culture, 466 F. Supp. 2d 410 (Dist. Puerto Rico 2006)* the court noted that "an assertion of governmental immunity is properly addressed under the provisions of rule 12 (b)(1). (Citations omitted). In ruling on such a

Case 2:11-cv-04023-MJW Document 12 Filed 06/02/11 Page 12 of 16

motion, the court may consider materials outside the pleadings in order to aid its determination regarding jurisdiction. (Citations omitted). Id. at p. 413).

*Infomath, Inc. v. University of Arkansas, 630 F. Supp. 2d 674 (Dist. Arkansas 2007)* the court stated that "a complaint should not be dismiss merely because the complaint does not say with precision all elements that give rise to a legal basis or recovery." Id.at p. 677.

In *Marketing Information Masters, Inc. v. The Board of Trustees of the California State University System, 552 F. Supp. 2d 1088 (S. Dist. California 2008)* the plaintiff requested leave to amend its complaint in the event the court dismisses any of his claims and the court entered its order granting Plaintiff leave to file an amended complaint accordingly Id. at p. 1098 – 1099.

IN CONCLUSION, the Plaintiff submits that for the reasons set forth above that the Court should overrule the Defendant's Motion to Dismiss and order that the parties proceed with this case and, in the event that the Plaintiff has failed to state a claim, grant the Plaintiff leave to file an Amended Complaint in this matter and for such other and further orders as to the court may seem just and proper in the premises.

Respectfully submitted:

TOFLE & OXENHANDLER,
ATTORNEYS, P.C.

_____
Marvin Tofle    MO Bar #23522
220 N. Eighth Street

P.O. Box 1404
Columbia, Missouri 65205
Phone: (573) 449-2929
FAX: (573) 875-0757
E-Mail: marvin@tofleox.com
Attorneys for Plaintiff
Paul Jackson

14

IN THE UNITED STATES FEDERAL DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PAUL C. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | Case No.: 2:11 – CV -4023 – MJW |
| ) | |
| CURATORS OF THE UNIVERSITY ) | |
| OF MISSOURI, ) | |
| A Public Body Corporate and Politic, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE
## OF PLAINTIFF'S RESPONSE
## TO DEFENDANT'S MOTION TO DISMISS

The undersigned hereby certifies that he served a true and complete copy of the above and foregoing Plaintiff's Defendant's Motion to Dismiss on the attorney for the Defendant by e-mail transmission to the E-Mail address for the attorney for Defendant set out in the pleadings filed in this cause at the following E-Mail address for such attorney:

Mr. Jeffrey J. Simon
Husch Blackwell LLP
Attorneys At Law
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
816-329-4711
Fax: 816-983-8080
E-Mail: jeff.simon@huschblackwell.com

on the ___1___ day of ___June_____, 2011.

Respectfully Submitted,

TOFLE & OXENHANDLER
ATTORNEYS, P. C.

/s/ Marvin Tofle
Marvin Tofle MO Bar #23522
220 North 8th Street
P. O. Box 1404
Columbia, Missouri 65205
Phone: 573-449-2929
FAX: 573-875-0757
E-mail: marvin@ tofleox.com
Attorneys for Plaintiff
Paul C. Jackson