IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PAUL JACKSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:11-4023-CV-C-MJW |
| THE CURATORS OF THE UNIVERSITY OF MISSOURI, | ) ) ) ) |
| Defendant. | ) ) |

## REPLY SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Plaintiff's Suggestions in Response to Defendant's Motion to Dismiss ("Plaintiff's Brief") (Doc. 12) fail to provide any basis for denying defendant's motion. Plaintiff submits no authority for his position that the University of Missouri ("University") does not enjoy 11th Amendment immunity, and ignores most of the arguments made by the University in support of its position. Likewise, Plaintiff's position that the Tiger Spot is protected by the Visual Artists Rights Act ("VARA") is grounded only in plaintiff's conclusory pronouncements, which are contradicted by the legislative history and case law set forth in the University's Suggestions in Support ("University's Brief") (Doc. 6).

The purpose of a reply brief is only to respond to the opposing brief – not to repeat arguments already made. With this understanding, an examination of Plaintiff's arguments establishes that his claims fail.

### I. Statement of Facts and Standard of Review

Plaintiff states that he "does not agree with the Defendant's description of the allegations contained in the Plaintiff's Complaint." Plaintiff's Brief at 1 (Doc. 12). However, Plaintiff then

simply repeats the allegations of the Complaint without attempting to point out the University's alleged mischaracterizations. There is nothing in the University's recitation of Plaintiff's allegations that Plaintiff specifically objects to, and the allegations repeated in Plaintiff's Brief are consistent with the University's recitation. This suggests that Plaintiff does not contest the allegations material to the University's arguments, making dismissal at this early stage appropriate.

At the end of Plaintiff's Brief, there are several cases cited regarding the standard of review. These cases do not add anything material to an understanding of the appropriate standard, with which this Court is quite familiar. It is enough to say that there is no need to allow Plaintiff to re-plead his case given that the issues and allegations are clear enough from the current record.

## II. The University of Missouri is an Instrumentality of the State and Therefore Enjoys 11th Amendment Immunity.

Plaintiff agrees that this Court, through the Honorable Scott Wright, has determined that The University of Missouri is an instrumentality of the state and therefore enjoys 11th Amendment Immunity. <u>Sherman v. The Curators of The University of Missouri</u>, 871 F.Supp. 344 (W.D. Mo. 1994).

Plaintiff then contends that <u>Sherman</u> is no longer controlling, and that the University is not an instrumentality of the State of Missouri for purposes of Eleventh Amendment immunity. In reliance on two slides from a longer PowerPoint presentation available on the University's website, Plaintiff argues that, because the State funds a lesser percentage of the University's budget than it used to, the University has somehow lost its immunity. Implicit in this argument is the proposition that the University's status should be re-examined every time that Eleventh Amendment immunity is asserted. Plaintiff's position has been repeatedly rejected by this Court.

Since Sherman, Missouri federal courts have repeatedly followed Sherman's holding that the University of Missouri is entitled to Eleventh Amendment immunity. James v. Board of Curators of Univ. of Mo., 2011 WL 147910 *3 (E.D. Mo. Jan. 18, 2011); Bakhtiari v. Curators of Univ. of Mo., 2007 WL 2080425 *2 (E.D. Mo. July 16, 2007); Ajiwoju v. Univ. of Mo.-Kansas City, 2007 WL 670982 *2 (W.D. Mo. Feb. 28, 2007) (Gaitan, J.); Vas-Cath, Inc. v. Curators of Univ. of Mo., 2005 WL 6124838 *4 (W.D. Mo. Oct. 25, 2005) (Fenner, J.); In re Rose, 214 B.R. 372, 374 (W.D. Mo. 1997). None of these cases has found that it is necessary to continually re-evaluate the relationship between the State and the University in order to determine whether the University is entitled to immunity.

Plaintiff's argument, that current circumstances require the Court to re-examine the University's immunity status, was expressly rejected by Judge Wright in the case of Ormerod v. Curators of the University of Missouri, No. 00-4068-CV-C-SOW. In the Ormerod case, Plaintiff argued that the University of Missouri should not have immunity because it receives private funding from which it could pay monetary damages, and that the circumstances entitling the University to such immunity should be re-evaluated in each case. Judge Wright, in granting summary judgment to the University, addressed and rejected plaintiff's argument as follows:

> [P]laintiff asserts that the Eighth Circuit requires a factual re-evaluation of the University's "particular circumstances" for each case in which eleventh amendment immunity is raised. This reading of Sherman is too broad. Sherman requires that eleventh amendment immunity be granted based on the circumstances of each suit. See Sherman, 16 F.3d at 863. **The University's immunity need not be reestablished for each new action.** The more recent Eighth Circuit holding in Scherer demonstrates this reasoning. See Scherer, 49 Fed.Appx. at 658-59.

Order, July 10, 2003 (Doc. 73, p. 4) (Attached as Ex. 1) (emphasis added).[1] Judge Wright's ruling was ultimately upheld by the Eighth Circuit. *See* Ormerod v. Curators of the University of Missouri, 97 Fed.Appx. 71 (8th Cir. 2004).

In fact, a review of Judge Wright's opinion in Sherman shows that the material facts are the same today. Nothing has changed in the University's Constitutional authorization, controlling legislation, or governing structure. The intertwinement between the State of Missouri and its University, as set forth in detail in Judge Wright's Sherman opinion, is unchallenged by Plaintiff. The unfortunate circumstance that the State now appropriates a proportionately lower percentage of the University's operating costs than it used to is immaterial to the Sherman analysis.

Regardless of what the two slides selected by Plaintiff show about the University's appropriations, budget and economic impact, Plaintiff presents no challenge to the essential holding in Sherman that any award will be derived from the state treasury. This issue has already been considered and decided. Plaintiff presents no reason for this Court to ignore such binding precedent.

The cases cited by plaintiff are of no help to his position. In fact, the two post-Sherman cases relied upon by Plaintiff, Romero v. Institute of Puerto Rican Culture, 466 F.Supp. 2d 410 (D.P.R. 2006), and Infomath, Inc. v. University of Arkansas, 633 F.Supp. 2d 674 (E.D. Ark. 2007), were both cited in the University's Brief. Both cases hold that the Copyright Remedy Clarification Act ("CRCA") did not validly repeal the states' immunity from suit under the Copyright Act, and both dismiss copyright claims based upon 11th Amendment immunity.

---

[1] The Eighth Circuit, in Scherer v. Curators of the University of Missouri, 48 Fed.Appx. 658 (8th Cir. 2002), upheld Judge Whipple's dismissal of the plaintiff's ADA claim against the Curators based upon Eleventh Amendment immunity.

Plaintiff's Brief has a very brief discussion in support of the proposition that, that in order to avail itself of 11th Amendment immunity, "the state must provide 'adequate' remedies under state law." Id. at 5. This is simply an incorrect statement of the law.

The several cases and quotes relied upon by Plaintiff are presented out of context. In <u>Jacobs v. Memphis Convention and Visitor's Bureau</u>, 710 F.Supp. 2nd 663 (W.D. Tenn. 2010), a photographer sued because defendant used unlicensed copies of his photographs in a promotional brochure. Like every other case to consider the issue, the court concluded that Congress did not validly abrogate state law immunity from copyright claims, and dismissed the case. Id. at 681-82.

<u>Jacobs</u> does discuss the availability of a remedy under state law. However, this is as part of the analysis of whether Congress validly abrogated states' immunity in CRCA. As discussed at length in the University's Brief, Congress can only abrogate states' immunity when it acts pursuant to the 14th Amendment. In order to do so, as discussed in <u>Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank</u>, 527 U.S. 627, 119 S.Ct.2199, 144 L.Ed.2d 575 (1999), one of the things Congress must consider is "the availability of state remedies...and hence whether the States' conduct might have amounted to a constitutional violation under the Fourteenth Amendment." Id. at 643. <u>Jacobs</u> concludes that, among other reasons, Congress' failure to diligently conduct this analysis renders CRCA invalid. 710 F.Supp.2d at 680.

Another case cited by plaintiff also supports defendant's position. In <u>Marketing Information Masters, Inc. v. The Board of Trustees of the California State University System</u>, 552 F.Supp. 2nd 1088 (S.D. Cal. 2008), the court concluded that CRCA did not abrogate 11th Amendment Immunity because, among other reasons, "the evidence demonstrates that the [congressional] committee minimally considered adequacy of state remedies." Id. at 1094.

Plaintiff simply misstates the law when he says that a state must show adequate remedies before it enjoys 11th Amendment immunity. Plaintiff does not cite a single case which supports this assertion. Upon examination, Plaintiff's cited cases actually support the position that CRCA did not validly repeal the University's 11th Amendment immunity from copyright claims.

### III. The Tiger Spot is Not Protected by VARA.

#### A. The Tiger Spot is Not a "Work of Visual Art"

Without citing any authority or definitional source, Plaintiff contends that the Tiger Spot is a "drawing" or "sculpture" and therefore falls within the scope of VARA. This contention is buttressed only by a series of conclusory statements which are contradicted by relevant authorities and common understanding.

Plaintiff's entire argument on this point rests on a flawed foundation. Plaintiff states that "the Court is directed to....not interpret the five categories narrowly...." Plaintiff's Brief at 7 (Doc. 12). He further refers to "[t]he Congress's [sic] direction to consider the categories in their broader sense...." Id. This is simply incorrect.

As discussed at some length in the University's Brief, Congress' unambiguous intent was exactly the opposite: VARA is a statute of limited scope and applies only to very specific, limited "works of visual art." Rather than torture the statutory language and the plain meaning of terms such as "drawing" and "sculpture" to try to bring claims such as Plaintiff's within the scope of VARA, Congress wanted the courts to apply VARA only very sparingly. It serves no purpose to repeat the arguments in the University's Brief here, other than to say there is just no support for Plaintiff's position that there should be a broad reading of the definition of "drawing" or "sculpture" under VARA. See H.R. Report 101-514, at 10-11 ("I want to stress that we have gone to extreme lengths to very narrowly define the works of art that will be covered"); Kelley v. Chicago Park District, 635 F.3d 290, 300 (7th Cir. 2011) ("To qualify for moral-rights

protection under VARA, [a work] cannot just be "pictorial" or "sculptural" in some aspect or effect, it must actually *be* a 'painting' or a 'sculpture.' Not metaphorically or by analogy, but *really*." (emphasis in original.))

Plaintiff asserts that Tiger Spot is a "drawing" or "sculpture", but never explains the basis for his assertion. Plaintiff admits that "the Tiger Spot may not be capable of being seen in its three dimensions," and then continues to argue that that is not a requirement for a sculpture. Plaintiff provides no support for this position, and does not attack the authorities and analysis in the University's Brief. Plaintiff's discussion about a "relief" are irrelevant.

Carter v. Helmsley-Spear, Inc., 71 F.3d 77 (2nd Cir. 1995), cited by Plaintiff, actually supports the University's position. The work of art at issue was the entire lobby of a building, composed of many separate sculptural elements which the court said constituted a "single indivisible whole." Id. at 83-84. The Carter lobby did include mosaic elements, but the mosaics were applied on the surface of a three dimensional work which, taken as a whole, was considered one piece of art, i.e., a "sculpture." Certainly a sculpture does not fall outside the protection of VARA simply because the artist has decided to adorn its exterior with mosaic glass pieces. However, neither does a flat mosaic embedded into the ground become a "sculpture" merely because some other true "sculpture" is covered in mosaics.

Neither is Tiger Spot a "drawing." Dictionary.com defines "drawing" as follows:

1. the act of a person or thing that draws.
2. a graphic representation by lines of an object or idea, as with a pencil; a delineation of form without reference to color.
3. a sketch, plan, or design, especially one made with pen, pencil, or crayon.

http://dictionary.reference.com/browse/drawing

Whatever a collection of glass tiles arranged in concrete might be called, it certainly cannot be called a "drawing" in any sense understood by Congress or the average person.

Plaintiff's discussion about artistic media misses the point. While it is true that "whether a particular work falls within the definition should not depend on the media or the materials used," Plaintiff's Brief at 7, this does not answer the real question. Certainly a "painting" is a "painting" whether it is on canvas or wood, just as a "drawing" is a "drawing" regardless of whether it is created with pencil, charcoal, or crayon. That, however, is not the question at issue in this case.

Neither is the question whether the Tiger Spot "exists in the grand tradition of visual art," as Plaintiff contends. Id. The question is whether the Tiger Spot falls within one of the very limited definitions of "works of visual art" protected by VARA.

It does not.

### B. The Tiger Spot is Site-Specific

Plaintiff concedes that "VARA does not apply to site-specific" art. Plaintiff's Brief at 8 [Doc. 12]. The only question, then, is whether the Tiger Spot is "site-specific" art. If it is, then Plaintiff fails to state a claim upon which relief may be granted.

Plaintiff contends that the Tiger Spot "never was intended to incorporate the location or the surrounding environment as a part of the work of art." Id. at 11. With due respect, this defies believability. Plaintiff alleges that "it was arranged between Plaintiff and Defendant that the Tiger Spot mosaic would be created and installed on the Lowry Mall in front of the library on the campus of the University...." Petition, ¶13 (Doc. 1). Thus, before any work began on the Tiger Spot, the parties understood *where* it was to be "created and installed." The very existence of the Tiger Spot was born in the context of its intended site: "in front of the library on the campus of the University."

With site-specific art, "the location of the work is an integral element of the work." Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128,134 (1st Cir. 2006). "This view contrasts

with so-called 'plop-art' where a separately conceived art object is simply placed in a space." Id. (citations omitted.) "A piece of plop-art does not incorporate its surroundings. Site-specific art is the opposite of plop-art." Id.

Of course the Tiger Spot "incorporates its surroundings," both physically and artistically. It did not just plop down on Lowry Mall. The Tiger Spot would not exist if it were not permanently bound into and with the surrounding plaza. At 30 feet in diameter, it would be a very odd intrusion in the wilds of a cattle pasture or in the middle of Rodeo Drive in Beverly Hills. If the Tiger Spot is not "site specific art," it is difficult to imagine what is.

Plaintiff's discussion about moving the Tiger Spot does not change the analysis. Whether a piece of site-specific art "could be" placed in some other location is not important. For example, surely the public sculpture park in Phillips could have been placed a bit further east or west on Boston Harbor. What is important is where it *is* placed. The undeniable fact is that the Tiger Spot is physically and artistically incorporated as a part of the University's campus. The fact that it could have been "created and installed" someplace other than Lowry Mall just doesn't matter. Plaintiff cannot credibly be heard to assert that its location on the campus of the Missouri Tigers is unrelated to the artistic expression and meaning of the Tiger Spot.

It is "site specific" art and outside the scope of VARA.

## Conclusion

Perhaps the most important thing about Plaintiff's Brief is that he does not challenge the University's discussion concerning the practical consequences of applying VARA to the Tiger Spot. As even Plaintiff must acknowledge, VARA was not meant to bestow upon artists such as Paul Jackson a permanent right to control public property and public spaces. Yet, if this claim survives and succeeds, that will be exactly what happens on Lowry Mall at the University of Missouri.

The reality is, as Plaintiff admits, that the Tiger Spot is "seriously damaged and it remains to be seen if it can even be restored." Plaintiff's Brief at 12. The unfortunate fact is that it cannot be restored. Allowing this lawsuit to continue, which is unsupported in fact and law, will not change this fact. Accordingly, for the reasons presented, the University moves for dismissal of this matter in its entirety.

Respectfully submitted,

HUSCH BLACKWELL LLP

/s/ Jeffrey J. Simon
William B. Kircher    MO# 18743
Jeffrey J. Simon      MO# 35558
4801 Main Street, Ste 1000
Kansas City, MO  64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
bill.kircher@huschblackwell.com
jeff.simon@huschblackwell.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was automatically forwarded this 17th day of June, 2011, by the Court's ECF system to:

Marvin Tofle
Tofle & Oxenhandler
220 N. 8th Street
Columbia, MO  65201
Attorneys for Plaintiff

/s/ Jeffrey J. Simon
Attorney