IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MR. PAUL C. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11-4023-CV-C-MJW |
| | ) |
| CURATORS OF THE | ) |
| UNIVERSITY OF MISSOURI, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is defendants' motion to dismiss plaintiff's complaint. Defendants have moved to dismiss on two grounds: (1) Eleventh Amendment sovereign immunity; and (2) lack of subject matter jurisdiction. Plaintiff has filed suggestions in opposition and defendants have filed reply suggestions in support.

The Supreme Court set forth the standard for evaluating a motion to dismiss in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555; accord Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009). Rather, the complaint must set forth sufficient facts to "nudge[ ] the [ ] claim[ ] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir.2010) (citing Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554-56.

## Background

Plaintiff's complaint alleges that he arranged to create his original work of visual art for the University of Missouri Columbia (hereinafter "University"), known as the Tiger Spot. The Tiger Spot was a mosaic consisting of glass tiles in the image of a Tiger. The University's mascot and symbol is a Tiger. Plaintiff spent approximately two years creating and installing the Tiger Spot in the Lowery Mall area on the University campus. The Tiger Spot mosaic consists of three layers: (1) the bottom layer which is a four-foot thick concrete pad set into the ground to securely anchor the Tiger Mosaic to the ground; (2) the second layer is a mastic or substance used to bind the first and third layers together; and (3) the top or third layer consists of one inch of concrete embedded with colored glass tile portraying plaintiff's image of a Tiger. Plaintiff alleges that defendants approved and arranged for the purchase of all materials used in the creation of the Tiger Spot mosaic and was responsible for all the engineering of the project. The materials and engineering were to be consistent with the specifications provided by plaintiff.

Plaintiff alleges that due to defendants' (1) failure to use proper materials and engineering, (2) negligence in not protecting the mosaic from rain during a critical point of curing, and (3) allowance of traffic on the mosaic at a time when the top layer of concrete did not have adequate time to cure and had been corrupted by the rain, the Tiger Spot was damaged. Plaintiff alleges that due to defendants' negligence, he spent months repairing the Tiger Spot on multiple occasions. Plaintiff's complaint also alleges that the Tiger Mosaic was vandalized on numerous occasions, requiring repair, but defendants continued to refuse to provide adequate security. Plaintiff's complaint also alleges that thereafter, defendants' failure to provide adequate drainage for the mosaic, as requested by plaintiff, allowed water to permeate the Tiger Spot. Finally, plaintiff alleges that the defendants' unilateral decision to erect a system of Bollards around the Tiger Spot further compromised the integrity of the Tiger Spot. Plaintiff alleges that the construction of the Bollards required use of a jackhammer to create holes in the concrete shelf of the Tiger mosaic, and involved heavy equipment such as a Bobcat on the concrete shelf surrounding the Tiger Spot, and even on the Tiger mosaic itself.

In March 2010, plaintiff states that the defendants notified him that it was not going to repair the Tiger Spot. Plaintiff alleges that without adequate maintenance, the Tiger Spot will

ultimately be damaged and destroyed beyond repair.  Plaintiff alleges that the actions the defendants engaged in and continue to engage in will potentially destroy the Tiger Spot mosaic and plaintiff's honor and reputation as an artist.  Plaintiff alleges that defendants' actions are a violation and breach of his rights under the Visual Artist's Rights Act.

Plaintiff alleges in Count I of his complaint that he will suffer irreparable harm if the Court does not enter an order restraining and enjoining the defendants from refusing to repair and maintain the Tiger Spot.  Plaintiff alleges that failure to enjoin defendants' actions will lead to the Tiger Spot being damaged and destroyed beyond repair, thereby depriving plaintiff of his rights under The Visual Artist's Rights Act.  Count II seeks damages for the actions of defendants, and Count III seeks a proper accounting of funds collected and received for the preservation and maintenance of the Tiger Spot.

*Eleventh Amendment Sovereign Immunity*

Defendants' motion to dismiss argues that the University is entitled to the protections of Eleventh Amendment sovereign immunity, and therefore, plaintiff's complaint should be dismissed.

Case law clearly shows the courts' previous determinations that the University was entitled to sovereign immunity.  See Sherman v. Curators of the Univ. of Mo., 871 F. Supp. 344 (W.D. Mo. 1994) (holding the University was protected by 11th Amendment immunity because the University did not enjoy significant level of autonomy from the state and any judgment would ultimately be paid from the state treasury).  See also Ormerod v. Curators of the Univ. of Mo., 97 Fed. Appx. 71 (8th Cir. 2004) (unpublished) (upholding the University's immunity, citing no change in circumstances since previous rulings on the issue); Scherer v. Curators of the Univ. of Mo., 49 Fed. Appx 658 (8th Cir. 2002) (unpublished) (citing to Sherman v. Curators of the Univ. of Mo., 871 F. Supp. 344 (W.D. Mo. 1994)).  The standard for determining whether the University is entitled to Eleventh Amendment immunity is specifically set forth in Sherman.  The court stated that "[e]ach university must be considered on the basis of its own particular circumstances in determining if the university is a state instrumentality that enjoys the protection of the Eleventh Amendment."  Sherman, 871 F. Supp. at 346.  The Eighth Circuit has identified two critical factors to be examined in making this determination.  Id.  These factors are the

3

University's level of autonomy, and most importantly, whether any judgment rendered against the defendants will be paid by state funds.  Id.  In applying these factors in the Sherman case, the court found that the University was not autonomous because (1) the University was created by the legislature and continues to be subject to detailed reporting requirements, (2) the state supplies a large percentage of the University's operating budget, and (3) the Governor has power to appoint the Curators.  Id. at 346-47.  The court also determined in the Sherman case that the monies to pay any judgment by the University would, in fact, include state funds.  Id. at 347.  The court found that due to the University's commingling of funds from multiple sources, there was no way for the University to, in fact, ensure that any judgment would come from non-state funds. Id.

Here, the plaintiff gives recognition to the previous determinations by the courts that the University Curators are entitled to Eleventh Amendment immunity.  Plaintiff argues that regardless of these prior determinations, the issue of immunity is subject to reconsideration by the Court because the University now receives less than ten percent of its annual budget from the state.

In response to plaintiff's argument, defendants argue that the University's immunity has been affirmed by the Eighth Circuit as recently as 2004 in Ormerod.

Upon review, the Court acknowledges the case law which clearly finds the University is entitled to the protections of sovereign immunity; however, the Court also recognizes that this same case law does not support that, once litigated, the University's entitlement to immunity cannot be revisited.  Rather, the case law specifically discusses that the University's immunity has been upheld because there had been no evidence of change in circumstances since the courts' previous rulings on the issue.  Ormerod, 97 Fed. Appx. 71.  Here, plaintiff alleges that there has been a change in circumstances regarding the University's funding, with only ten percent of the budget now being provided by the state, and almost twenty percent from the federal government. Plaintiff alleges that as a result of the limited state funding of the University and the higher percentage of funding by the federal government, the University has become more of a federal instrumentality than that of the state government.

4

At the motion-to-dismiss stage, this Court finds that plaintiff's allegations and facts set forth in support are sufficient to state a plausible claim against the University Curators. Whether there has been a sufficient change in circumstances such that the University Board of Curators would no longer be entitled to Eleventh Amendment sovereign immunity is a question of fact, which can be properly addressed at summary judgment.

The related issue of whether the Visual Artists Rights Act, on which plaintiff's claims rely, could overcome Eleventh Amendment immunity is best addressed after a determination is made as to whether the University Board of Curators is entitled to the protections of such immunity.

*Applicability of Visual Artists Rights Act*

The Visual Artists Rights Act (VARA) was enacted in 1990 as an amendment to the Copyright Act to provide for the protection of the "moral rights" of artists who create specific types of art. Moral rights are generally grouped into the rights of attribution and the rights of integrity. At issue in this case is the right of integrity which includes the artist's right to prevent modification, mutilation or distortion of the artwork, and in some cases to prevent its destruction. 17 U.S.C. § 106A(a).

The statutory coverage of the VARA is limited to paintings, drawings, prints, sculptures and photographs created for exhibition existing in a single copy or a limited edition of 200 or less. 17 U.S.C. §§ 106A(a) and 101 (defining "work of visual art"). The definition also contains a number of specific exclusions, including the specific exclusions of posters, maps, globes, books, newspapers, magazines and other periodicals, a motion picture or other audiovisual work, merchandising and promotional materials, any work made for hire, and any work not subject to copyright protection under this title. 17 U.S.C. § 101. There are additionally two specific cited exceptions. These exceptions are: (1) for a work of visual art that has been incorporated in or made part of a building in such a way that removing the work from the building will cause destruction, distortion, mutilation or modification of the work; or (2) when the author consented to the installation of the work in the building either before the effective date as set forth in section 610(A) of the VARA, or a written instrument executed after such effective date that is signed by the owner of the building and the author and that specifies that installation of the work

5

may be subject to destruction, distortion, mutilation or other modification by reason of its removal.  Id.

Here, defendants argue that plaintiff's mosaic is not a "work of visual art" and moreover, is "site-specific" art to which the VARA does not apply.  Plaintiff argues that the Tiger Spot is a work of visual art and falls under the protection of the VARA as "a painting, drawing, print or sculpture. . . ."  17 U.S.C. § 101.

Upon review, it appears from the VARA statute itself, and the case-law interpreting the statute, that determination as to whether a particular piece of art is protected is made on a case-by-case basis.  In this case, there are persuasive arguments and supporting case law supporting the arguments of plaintiff and defendants as to whether the Tiger Spot is a work of visual art protected by the VARA.  Therefore, at the motion to dismiss stage, plaintiff's complaint is sufficient to state a claim.  Plaintiff's allegations need only be plausible.  With no on-point case law in the Eighth Circuit, this Court considers the persuasive findings of other circuits.  Cases such as Kelley v. Chicago Park Dist., 635 F.3d 290 (7th Cir. 2011); Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128 (1st Cir. 2006); Pollara v. Seymour, 344 F.3d 265 (2nd Cir. 2003), provide arguable bases for the plausibility of plaintiff's Tiger Spot being protected by the VARA.

The Kelley case from the Seventh Circuit, on which the Supreme Court recently denied certiorari on October 3, 2011, makes a persuasive interpretation of the VARA.  The court in Kelley discusses what it believes the definition of "painting" is under the VARA.  The court states that the definition of "painting" under the VARA is "a representation on a surface executed in paint or colours. . . .  The representing of a subject on a surface by application of paint or colours."  Kelly, 635 F.3d at 301 n.7.  In applying this standard to the Tiger Spot, it appears arguable that the placement of color tiles on the surface of the concrete would qualify as a painting.

The VARA's legislative history, as quoted by the First and Second Circuits, states that "[a]rtists may work in a variety of media, and use a number of materials in creating their works.  Therefore, whether a particular work falls within the definition should not depend on the medium or materials used."  Phillips, 459 F.3d at 136 (quoting H.R. Rep. No. 101-514, at 6.).  See also Pollara v. Seymour, 344 F.3d 265, 269 (2nd Cir. 2003) (Congress specifically instructed the courts

6

that whether a particular work of art falls within the definition should not depend on the medium or materials used, but rather should be based on common sense and generally accepted standards of the artistic community). Here, the fact the colors to be applied are in the form of glass tiles, and the surface in concrete, arguably does not remove the Tiger Spot from the definition of "work of visual art."

The Kelley case also calls into question interpretations of the VARA which have found that "site-specific art" is automatically excluded from the protections of the VARA. 635 F.3d at 306-07. Cf. Phillips, 459 F.3d 128 (holding that VARA does not protect site-specific art).

## Conclusion

Construing plaintiff's claims liberally, as required, and for the reasons set forth above, this Court finds that the allegations in plaintiff's complaint sufficiently set forth a claim which is plausible on its face. It is, therefore,

ORDERED that defendants' motion to dismiss is denied.

Dated this 18th day of November, 2011, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge

7